Todd WALKER, Plaintiff–Appellant,

v.

Arthur ELBERT, Jerry Farley, Don Flegal, Earl Whitman, Royce Clark, Caralyn Bullock, and Pat McAlister, Defendants–Appellees.

No. 94–6395.

United States Court of Appeals, Tenth Circuit.

Jan. 31, 1996.

Steven Langer, Norman, Oklahoma, for Plaintiff–Appellant Todd Walker.

Fred A. Gipson, (Lisa Millington, and Jill Bush Raines with him on the brief), Norman, Oklahoma, for Defendants–Appellees.

Before KELLY, Circuit Judge, SETH, Senior Circuit Judge, and BROWN, Senior District Judge.*

WESLEY E. BROWN, Senior District Judge.

When plaintiff-appellant was terminated from his job as a delivery person in the purchasing department of the University of Oklahoma, he filed this action claiming, among other things, that the defendants, individually and/or as officials of the university, deprived him of property without due process of law in violation of the Fourteenth Amendment, and that a dress code adopted by the university violated his First Amendment right to free speech. In addition to these claims under 42 U.S.C. § 1983, plaintiff

---

* The Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

also alleged state law claims for wrongful discharge.[1]

The district court granted summary judgment in favor of defendants on all claims except for plaintiff's First Amendment "dress code" allegation, which was submitted to a jury. Although the university "dress code" violated plaintiff's First Amendment rights, the jury found that defendant Clark was entitled to qualified immunity.

In this appeal, plaintiff contends that the district court abused its discretion in denying his motion to amend the complaint, that the court improperly submitted the issue of qualified immunity to the jury, and erred in granting summary judgment to defendants on all other claims.

The district court granted summary judgment on the majority of plaintiff's claims upon these undisputed facts:

Plaintiff Todd Walker was employed by the University of Oklahoma as a delivery person in the storeroom of the purchasing department from September 4, 1984 to April 1, 1992. He had no written contract of employment.

The board of regents of the university is an "at will" employer. The university handbook contains a disclaimer stating that nothing therein should be interpreted to create any express or implied contract right.

The handbook sets out a "Positive Discipline Procedure" involving three steps of discipline: first, an oral reminder from a supervisor; second, a written reminder if there has been no correction; and third, a disciplinary leave with or without pay for up to five days. Discharge is not considered a final step in the procedure, since that step is taken only when the foregoing steps have been used and failed. Discharge is also appropriate if the employee commits a major offense which involves willful misconduct, dishonesty, or threatens the safety of the university.

The university also has a grievance process available to employees who seek to resolve employment conflicts. This process includes procedural safeguards such as a right to assistance, to call witnesses, and to an impartial hearing before a grievance committee. The committee hears the matter and makes a non-binding recommendation which is then reviewed by a vice president or provost and finally by the president of the university.

Plaintiff's termination was preceded by several attempts to discipline him. He was given an oral reminder by his supervisor, defendant Caralyn Bullock, on April 10, 1991, regarding his refusal to follow instructions and his insubordinate work attitude. A written reminder was sent on June 7, 1991, concerning plaintiff's continuing insubordination, and a meeting was held on June 13, 1991, regarding plaintiff's poor attitude while working under Bullock's supervision. Present at this meeting were plaintiff, Bullock and Bullock's supervisors, defendants Clark and Whitman. Plaintiff was placed on a one-day decision making leave on June 14, 1991; and, upon his return to work, he agreed that in the future there would be no absences from work without authorization; that he would give full attention to the supervisor providing instructions or seeking information; that he would follow all instructions; and that he would refrain from demonstrating disdain and insubordination toward supervision.

Plaintiff filed grievances over his treatment and working conditions numerous times over the course of a year—on May 22, May 31, June 10, June 28, 1991, and on February 11 and February 21, 1992.

The defendant Clark instituted a dress code for all personnel in the operations department on August 13, 1991. Employees were not permitted to display slogans, politi-

---

1. Defendant Elbert was the university vice president for administrative affairs, including the department of purchasing. Defendant Farley was Elbert's successor in office. Defendant Whitman was the university director of purchasing, including material operations. Defendant Clark was the university manager of material operations, who instituted a dress code for all personnel in the operations department. Defendant Caralyn Bullock was plaintiff's immediate supervisor in the storeroom. Plaintiff also claimed that defendants Flegal, the university personnel director, and McAlister, a personnel technician, conspired with other defendants to "blackball" his future employment opportunities.

cal signs or statements, or obscene statements or pictures on their clothing.[2]

As a result of unsatisfactory performance reviews and several informal discussions with his supervisors, plaintiff was finally terminated on April 1, 1992. Plaintiff was not terminated because of any violation of the university dress code. Plaintiff instituted a grievance procedure on April 10, 1992, at which time he was suspended without pay. On June 10, 1992, a grievance committee heard the grievance; and, on June 17, the committee recommended that plaintiff be reinstated with full back pay and that Bullock and plaintiff undertake counseling sessions to improve their working relationship.

Pursuant to grievance procedures, the recommendation was reviewed by defendant Elbert, then vice president of administrative affairs. Elbert requested additional information from defendant Don Flegal, director of personnel, who recommended that Elbert not follow the committee recommendation. On September 3, 1992, Elbert notified plaintiff that he was upholding the original termination decision, and Elbert's action was affirmed by the president of the university, Richard Van Horn, on September 21, 1992.

Although plaintiff had been injured on the job in October, 1988, he did not file a claim for benefits under worker's compensation until after his termination.

After plaintiff was terminated, defendant Bullock completed a personnel form indicating that he would not be eligible for rehire; this form, approved by Whitman and Elbert, was filed in plaintiff's personnel folder.

In his complaint, plaintiff alleged that defendants were responsible for his termination in violation of a property right to job security; that defendants, through the dress code, deprived him of his right to freedom of expression; and that they deprived him of a liberty interest in obtaining other employment by stigmatizing and blacklisting him from further employment opportunities. In addition, plaintiff claimed that defendants breached an implied duty to provide a fair hearing and review and that he was terminated in retaliation for filing a worker's compensation claim.

After our review of the record, we conclude that the trial court properly sustained defendants' motions for summary judgment upon all but one of plaintiff's claims and properly entered judgment for defendant Clark on the dress code issue.[3]

In the first instance, there was an absence of evidence that plaintiff possessed any property interest in his continued employment by the university. As noted by the trial court, a tenured public employee may acquire a property interest in continued employment, but this interest must be created by an independent source such as state law, whereby the public employee has a " 'legitimate claim of entitlement' to—not merely a 'unilateral expectation' of—continued employment." *Carnes v. Parker*, 922 F.2d 1506, 1510 (10th Cir.1991), applying Oklahoma law. In *Carnes*, the plaintiff, who was employed by a public hospital as a "permanent" radiology technician, had a dispute with her supervisor and was terminated for insubordination and failure to appear for work. The hospital personnel manual established formal three-level post-termination grievance procedures to implement a "Fair Treatment Policy" designed to resolve employment problems.

In ruling that Carnes was only entitled to the grievance procedures contained in the employees' handbook, and was not entitled to continued employment, this circuit reviewed the applicable Oklahoma employment law in this manner:

Carnes' federal constitutional claim depends on her having a property right in continued employment. *Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct.

2. The pertinent provisions of the dress code were as follows:
  2. Apparel will be neat, clean and well mended, will display no slogans, political signs or statements, obscenity, or obscene images offensive to one's feelings or to public prevailing notions of modesty or decency.

3. Plaintiff conceded that he did not have the evidence to proceed with his state public policy claim, his stigmatization claim against defendants Whitman, Clark and Bullock, and his worker's compensation discharge claim against defendant Elbert.

2701, 2708–10, 33 L.Ed.2d 548 (1972). If she in fact has such a right, then the government cannot deprive her of continued employment without procedural due process. . . .

Property interests are not created by the due process clause of the Constitution . . . Rather, they are created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract. . . .

\*   \*   \*   \*   \*   \*

A public employee has a property interest in continued employment if under state law that employee has a "legitimate claim of entitlement" to—not merely a "unilateral expectation" of—continued employment . . . To ascertain whether Carnes is entitled to procedural due process we must determine whether the Oklahoma Supreme Court would find Carnes could rely on the policies and procedures contained in her employer's personnel manual to create a legitimate claim of entitlement to continued employment.

Initially we note Oklahoma recognizes the employment at-will doctrine. In the absence of an implied or express agreement between the employer and its employees, the employer may terminate an employee at any time with or without cause . . . The Oklahoma Supreme Court has refused to recognize an implied covenant of good faith and fair dealing in employment at-will contracts. . . . (922 F.2d at 1509–1510)

In the *Carnes* case, this court, in recognizing that the language of an employer's personnel manual may alter the employment at-will relationship, found that Carnes was entitled to the grievance procedures outlined in the personnel manual as a part of her employment contract although the procedural protections themselves were not sufficient to create a property interest in continued employment. In so ruling, this court noted that even though the handbook provided some specific grounds for termination (insubordination, refusing to obey orders, etc.), this factor did not establish any contractual right promising continued employment. 922 F.2d at 1511.

While Walker contends that defendants assured him orally that he would not be terminated except for "cause," we note the express disclaimer language contained in the handbook as clear evidence that he could not possibly have possessed a contract right to continued employment by the university. *See Johnson v. Nasca,* 802 P.2d 1294 (Okla. App.1990). In addition, the trial court found that there was no dispute that insubordination, the stated reason for plaintiff's termination, constituted "cause" although Walker continued to assert that he was not insubordinate. In any event, there was no need to resolve any presumed factual dispute over "cause" since plaintiff clearly received complete procedural due process in accordance with the employment manual.

The evidence, as recited by the trial court and fully supported by the record, sets out the events leading to plaintiff's termination: (Vol. III Record at p. 603)

In plaintiff's case, before termination, plaintiff received numerous warnings from his immediate supervisor, defendant Bullock, both orally and in writing. Several meetings with his supervisors were held to discuss the conditions of his continued employment at which Walker had the opportunity to present his perspective and suggest potential courses of action. He was placed on decision-making leave for one day and agreed to meet certain employment standards. Nothing in this process suggests that plaintiff received anything less than what he was entitled to under the Fourteenth Amendment.

Post-termination, plaintiff availed himself of the grievance procedures. He received a full adversarial hearing at which he had the right to assistance and to examine witnesses. Although ultimately the grievance was not resolved to plaintiff's satisfaction, again nothing presented to the Court at this time suggests that there was a constitutional infirmity in the process as provided by the University. As the Tenth Circuit observed regarding a similar due process claim in *Carnes,* plaintiff received "all the process to which (she) was entitled

*... plus much more."* 922 F.2d at 1512 (emphasis in original).

Under the law, due process requires only that the university provide an adequate opportunity to challenge the deprivation of any protected interest Walker might have had in his employment. *See Seibert v. U. of Okl. Health Sciences Center,* 867 F.2d 591, 598 (10th Cir.1989), approving the university's disciplinary procedures. Under the undisputed facts set out above, the trial court properly found that defendants were entitled to summary judgment upon plaintiff's claim that he had been denied procedural due process under the Fourteenth Amendment.

Plaintiff's third cause of action alleged that he was deprived of a Fourteenth Amendment liberty interest in obtaining future employment by defendants Elbert, Whitman, Bullock, Flegal and McAlister in that they, by checking "no rehire" on his termination report, "blackballed" his future opportunities for employment. In order to prevail on this claim, plaintiff was required to prove that there was a publication of a defamatory statement which would tend to jeopardize employment opportunities. Charges of insubordination or poor work habits are not considered to be stigmatizing. *See Hicks v. City of Watonga, Okl.,* 942 F.2d 737 (10th Cir.1991). In *Hicks,* a police officer was terminated because he refused to take a polygraph exam and was therefore found to be insubordinate. In finding that defendants were entitled to summary judgment on a liberty interest claim, this circuit ruled that:

> In order to state a constitutional claim, the charges must implicate "dishonesty or immorality" in order to deprive an employee of a liberty interest in his good name and reputation. *See Melton v. City of Oklahoma City,* 928 F.2d 920, 927 (10th Cir. 1991). This court has held that charges implicating only insubordination or poor work habits are not stigmatizing, and therefore do not violate a liberty interest. *See Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988) (charges of neglect of duties and insubordination not stigmatizing); *Sipes v. United States,* 744 F.2d 1418, 1422 (10th Cir.1984) (charge of lack

of reliability and engaging in "horseplay" not stigmatizing). Thus, the defendants are entitled to summary judgment on the liberty interest claim.. (942 F.2d at 746)

Here, the trial court correctly found that plaintiff failed to present evidence that stigmatizing statements were made and published, and that such statements caused a loss of employment opportunities. His speculative beliefs to the contrary are insufficient to create an issue of fact. *Lane v. Town of Dover, Okl.,* 761 F.Supp. 768, 772 (W.D.Okl. 1991), *affirmed,* 951 F.2d 291 (10th Cir.1991). The trial court did not err in granting summary judgment on the third count of plaintiff's complaint.

Summary judgment was granted against plaintiff on the fourth count of his complaint which alleged that Flegal and Elbert failed to act impartially in reviewing plaintiff's grievance. As to the claims in this count, plaintiff alleged that Elbert failed to keep to the 15-day time line prescribed in the employment manual, and that he "signed off" on the termination papers and asked for additional information from Flegal regarding plaintiff's case. Again, as noted by the trial court, plaintiff makes no claim that he was harmed in any way by Elbert's delay in reviewing the recommendation, and Elbert was entitled to seek whatever additional information was required in order to make a fair decision.

There was no evidence that Elbert failed to act impartially by terminating plaintiff and then by reviewing plaintiff's grievance following that termination. In the first instance, Elbert did not fire Walker—he only approved the decision of plaintiff's immediate supervisor to do so. As a vice president of the university, Elbert approved the decision of the supervisor according to university procedures. Thereafter, the grievance procedures of the university authorized Elbert to review plaintiff's case and send it on to the president of the university for further evaluation.

Likewise, summary judgment was properly granted to defendant Elbert on plaintiff's claim of denial of due process. Again, there was no dispute as to any material fact necessary to a decision on this issue.

As previously noted, the trial court properly found that plaintiff had no property interest in continued employment with the university by reason of oral promises or formal contract. A mere subjective expectancy of continued employment is not enough. See *Perry v. Sindermann,* 408 U.S. 593, 601–603, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570, 580–581 (1972). The grievance procedures themselves created no affirmative duty to plaintiff on the part of any reviewer to uphold the grievance committee's recommendation. Likewise, the university procedures do not state that Elbert was ineligible to review the grievance simply because of his action in approving Walker's termination in the first instance. The trial court noted that "the procedure provided for review by the University president as a final check against any potential arbitrary action by the vice-president—a step that occurred in this case."

As to the First Amendment claim, plaintiff does not allege that he was discharged for any violation of the university dress code. In ruling on the motion for summary judgment, the trial court found that the dress code did violate First Amendment rights, and that Clark "is not entitled to qualified immunity and summary judgment is inappropriate at this time because material facts are in dispute." The dress code claim and the issue of qualified immunity were presented to the jury by a special question on the verdict form in the following manner:

> As of August 1991, clearly established law precluded the publication of a dress code that absolutely prohibited employees like Mr. Walker from wearing slogans at work. Should an employee in Mr. Clark's position reasonably have been aware of this law in August 1991?

The jury answered "No" to this question. Appellant claims that the district court erred in referring to the jury the issue of reasonableness as it related to qualified immunity, citing *Harlow v. Fitzgerald* 457 U.S. 800, 817–820, 102 S.Ct. 2727, 2737–2739, 73 L.Ed.2d 396, 410–411 (1982).

Here the trial court, in ruling on the motion for *summary judgment,* determined that applicable law had been clearly defined at the time in issue. That ruling only pertained to the question of whether or not defendant would clearly be entitled to judgment as a matter of law. The trial court later clarified the pretrial ruling in this manner:

> What was meant there, and what I should have said was: "That the Court finds that Clark is not *now* entitled to qualified immunity but there are questions of fact that survive summary judgment." And that's a question that we'll hash out at trial, since all I was doing in the order was deciding the summary judgment disposition. (Emphasis added) (Exhibits to Appellant Brief, p. 778)

■ In the first instance, we note that the university defendants have not cross-appealed the decision of the district court on the dress code itself, and we express no opinion on that ruling. While we do recognize that the ultimate question of a defendant's good faith immunity is frequently determined as a matter of law, a defendant may rely on special circumstances to raise an issue of fact to be determined by a jury. See *Cannon v. City and County of Denver,* 998 F.2d 867, 876 (10th Cir.1993); and *Lutz v. Weld County School Dist. No. 6,* 784 F.2d 340 (10th Cir.1986). In *Cannon,* this court held that police officers, who allegedly relied upon unofficial statements given by a judge, were not entitled to summary judgment as a matter of law on their defense of "exceptional circumstances" entitling them to qualified immunity, since that issue raised questions of fact. In *Lutz,* which involved a claim of employment discrimination against a handicapped person, a jury returned a verdict in favor of all of the defendants, and plaintiff claimed that the court had erred in its instruction to the jury on qualified immunity. On appeal, this court found that defendants had failed to allege special circumstances which would raise a factual issue to be submitted to a jury:

> Defendants were ... entitled to an instruction on their qualified immunity defense only by raising a fact issue as to whether there were exceptional circumstances such that a reasonable person in their positions would not have known of the relevant legal standard. (784 F.2d at 343).

While it was noted that the issue of qualified immunity had been improperly submitted to the jury, because of the absence of factual issues, the court further held that considering the instructions as a whole there was no reversible error.[4]

During trial in the case before us, the defendant Clark presented evidence of circumstances which would entitle the jury to find that a reasonable person in his position would not have known of the relevant legal standards.[5] Whether defendant Clark was entitled to immunity as a matter of law, or whether he was entitled to immunity under a finding of fact by the jury, we find there was no error on the issue of the immunity defense.

Finally, plaintiff contends that the trial court erred in denying his pretrial motion to amend his complaint.

On July 19, 1994, approximately two months before trial, plaintiff filed a motion to file a second-amended complaint containing seven claims, all but two of which were included in his first-amended complaint. The new claims were based on evidence which was allegedly discovered during depositions in May and June which would tend to establish that plaintiff's employment was terminated in part because of testimony he gave before a grievance committee, hearing a grievance filed by a co-worker Francis Whitlock. Based upon this evidence, plaintiff sought to add a claim for violation of his right of free speech and a state tort claim for wrongful discharge in violation of public policy.

A motion to amend is within the trial court's discretion and need not be granted if the proposed claims would not withstand a motion for judgment. *Castleglen Inc., v. Resolution Trust Corp.*, 984 F.2d 1571, 1584–1585 (10th Cir.1993); *Schepp v. Fremont County, Wyo.*, 900 F.2d 1448, 1451 (10th Cir.1990).

The district court denied the motion to amend as being out of time and, in addition, correctly found that the new claims were "tenuous at best." It should be noted that the grievance of Francis Whitlock was heard by a grievance committee on October 16, 1991, after disciplinary procedures were instituted against plaintiff (Vol. II Record, 585, Exh. D). In addition, it is undisputed that neither Elbert nor Whitman initiated the process which led to plaintiff's termination. The record establishes that plaintiff had been counseled, cautioned, and disciplined many times before the Whitlock grievance hearing; and his unacceptable and insubordinate behavior continued well into 1992, just before his termination.[6] After plaintiff had been placed on the one-day decision making leave on June 14, 1991, and had agreed to follow the rules in the future, he took unscheduled absences from work on July 24, July 15, and August 27, and was counseled on his failure to follow instructions and attitude on August 28. These infractions resulted in two meetings on September 13, 1991, between plaintiff and his superiors, including defendant Elbert, the vice president of administrative affairs for the university. The first meeting between Elbert, plaintiff, and defendant Fle-

4. "Since the statute was laid out in plain terms for the jury, we do not find that there was improper submission to the jurors of a question of law, or of the state of the law. The real issue was whether the conduct of the defendants violated the established right, defined in the instructions, and there was no reversible error in the charge in this respect." 784 F.2d at 344.

5. At trial Clark testified that he had a military background and occupied only a mid-level position as senior buyer and material operations manager, where he oversaw the storeroom and delivery services, directly supervising only one person. As such, he testified that "I don't write policy, I don't establish policy," and he explained that he believed he was following university policies regarding political activities on campus with

a concern that employees present a neat and clean appearance to the public.

Clark testified that he was completely unaware that the dress code was unacceptable, that no one complained about it, and that plaintiff did not file any grievance concerning the policy. Clark further testified that he first learned that the dress code was "not legal" at the time the trial court issued its ruling on the motion for summary judgment shortly before trial. The dress code was then amended.

6. Plaintiff's Exhibit 16, Vol. III Record, p. 773 lists 36 occasions, from November, 1990 through March 18, 1992 relating to plaintiff's work habits, 15 of which related to insubordination, improper attitude and/or failure to follow instructions.

gal, director of personnel services, resulted from Elbert's knowledge that plaintiff's supervisors had recommended that he be terminated. At this first meeting, Elbert listened to plaintiff's view of the circumstances and received assurances from him that he would change his attitude and behavior. After this first meeting, Elbert met with plaintiff's supervisor "and obtained another chance for Walker." At this time Elbert advised plaintiff "that he was on his last chance and that unless his attitude and behavior changed his employment would be terminated." (See also Exhs. E–1, E–2, Answer Brief)

Following the above-described meetings with Elbert, the record discloses that among other incidents, plaintiff had two further unscheduled absences (in October and December), and on February 5, 1992, he was cited for "Insubordination, disrespect toward supervisor, inattention." (Vol. III Record, p. 773)

Under all of these circumstances, the trial court's denial of leave to amend was not an abuse of discretion.

There being no error, the judgment of the district court is AFFIRMED.