BRISCOE, Circuit Judge,
concurring:
I concur in the outcomes set forth in the majority opinion. I write separately only on the qualified immunity issue, which I would analyze differently. The majority concludes there was a factual dispute regarding the reasonableness element of the qualified immunity defense which under *1017 Roska ex rel. Roska v. Peterson, 328 F.3d 1230 (10th Cir.2003), and Walker v. Elbert, 75 F.3d 592 (10th Cir.1996), would permit the qualified immunity issue to go to the jury. I would conclude that the district court erred in submitting the qualified immunity issue to the jury but that the error did not rise to the level of plain error[1] because the jury was properly instructed regarding plaintiffs clearly established right to be free from sexual harassment. See J.A. v. Tucumcari Mun. Schs., 321 F.3d 1285, 1288 (10th Cir.2003) (stating “the law holding that sexual harassment is actionable as an equal protection violation has long been clearly established”); Lutz v. Weld County Sch. Dist., 784 F.2d 340, 343-44 (10th Cir.1986) (holding improper submission of qualified immunity issue to jury was not reversible error when jury was properly instructed regarding plaintiffs clearly established rights). Although I would also conclude the wording of the instruction incorrectly conveyed that qualified immunity involves both subjective and objective elements, I agree with the majority that Maestas was not prejudiced by the substance of the instruction because it stated the two purported elements con-junctively.
For two reasons, I conclude the district court should not have instructed the jury on qualified immunity. First, Lujan did not properly raise the issue. Although Lujan raised qualified immunity as an affirmative defense in his answer to the second amended complaint, he did not raise the issue in a motion to dismiss or a motion for summary judgment. Further, the issue of qualified immunity was not raised specifically in the pretrial order.
The majority cites Guffey v. Wyatt, 18 F.3d 869, 873 (10th Cir.1994), in support of its conclusion that the affirmative defense of qualified immunity once pled as an affirmative defense may then be raised at any point in the proceedings. Guffey filed a 42 U.S.C. § 1983 action against Wyatt, a police officer, alleging Wyatt’s actions against Guffey constituted an arrest without probable cause in violation of the Fourth Amendment.[2] In Guffey, the qualified immunity defense was not only pled but also raised in a motion for summary judgment and, apparently, specifically included in the pretrial order. Id. at 18 F.3d at 870-71, 873 n. 6. It is well established that the pretrial order is the controlling document, for trial. Wilson v. Muckala, 303 F.3d. 1207, 1215-16 (10th Cir.2002). Further, in Guffey, we expressly declined to rule on the question. of whether the jury should.be instructed on the issue of qualified immunity. 18 F.3d at 873.
Second, Lujan presented no evidence at trial to support the defense. His position throughout is best described as a general denial of all allegations against him. Such a denial does not raise a question of fact relevant to the qualified immunity inquiry *1018 which would justify a jury instruction on qualified immunity.
It is helpful to first consider how the qualified immunity inquiry typically works. The first step of the qualified immunity analysis is to ask: “Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer’s conduct violated a constitutional right?” Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (emphasis added). “[I]f a violation could be made out on a favorable view of the parties’ submissions, the next, sequential step is to ask whether the right was clearly established.” Id. “The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.” Id. at 202, 121 S.Ct. 2151. In the vast majority of cases, there is no question of fact relevant to the qualified immunity issue. In some cases, as the majority notes, evidence of “exceptional” or “extraordinary” circumstances may create an issue of fact and justify submission of the qualified immunity question to the jury. This is not such a case.
The “extraordinary circumstances” exception to the lack of immunity was first identified in Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In Harlow, the Supreme Court explained its scope as follows: “If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.” Id. at 818-19, 102 S.Ct. 2727 (emphasis added).
In Lutz, we discussed when it is appropriate to instruct a jury on qualified immunity. First, the defendant must have properly raised the defense. The plaintiff then has the burden of convincing the court that the law relied upon was clearly established at the time of the alleged constitutional violation. If the plaintiff fails to carry this burden, judgment must be entered in favor of the defendant who has raised the defense. On the other hand, if the plaintiff does carry the burden, the defendant is entitled to a jury instruction on qualified immunity “only by raising a fact issue as to whether there were exceptional circumstances such that a reasonable person in [his] position! ] would not have known of the relevant legal standard.” Lutz, 784 F.2d at 343 (emphasis added).
Harlow and Lutz indicate that the factual inquiry relevant to the qualified immunity question, if any, is whether there were “extraordinary” or “exceptional” circumstances so that the defendant neither knew nor should have known of the “relevant legal standard.” In this case, the defendant did not assert that “extraordinary circumstances” prevented him from knowing the relevant legal standard that governed his conduct. His contention that he was not Maestas’ supervisor at all times relevant to her complaint does not go to the question of whether he knew or should have known the relevant legal standard. Rather, whether Lujan was Maestas’ supervisor is relevant to the question of whether he acted under color of state law and, thus, whether he is accountable under Section 1983.
The cases from this circuit upon which the majority relies, Roska and Walker, are distinguishable. Unlike the defendants in Roska and Walker, Lujan was not relying *1019 on “exceptional circumstances” as a reason for his alleged actions. We do not have the situation here where the defendant has asserted extraordinary circumstances justifying his ignorance of the relevant legal standard, such as reliance on a state statute, regulation, or official policy that explicitly sanctioned the conduct in question. See Roska, 328 F.3d at 1251-52 (defendants claimed facially valid state statute sanctioned their conduct); Walker, 75 F.3d at 598-99 (defendant claimed to be a mid-level manager merely following university policy). Nor does Lujan allege that he relied on the advice of counsel which effectively “prevented [him] ... from knowing the relevant legal standard,” even though the relevant constitutional principle was clearly established. Roska, 328 F.3d at 1254 (quoting V-1 Oil Co. v. State of Wyoming, 902 F.2d 1482, 1488-89 (10th Cir.1990)). Rather, the dispute at trial centered on whether Lujan actually violated Maestas’ Fourteenth Amendment rights. Whether extraordinary circumstances prevented him from knowing the relevant legal standard was not an issue.
Further, I find neither Fisher v. City of Memphis, 234 F.3d 312 (6th Cir.2000), nor Catone v. Spielmann, 149 F.3d 156 (2d Cir.1998), persuasive. Crucial to the court’s analysis in Fisher was that the case involved a Fourth Amendment excessive force claim. While acknowledging that the issue of qualified immunity “normally rests with the court,” the court stated, “in cases arising under the Fourth Amendment’s reasonableness standard the applicability of qualified immunity will often turn on the resolution of contested factual issues.” Fisher, 234 F.3d at 317. In Fisher, the question submitted to the jury was whether the defendant officer’s “use of deadly force had been objectively unreasonable.” Id. It is not at all clear that Fisher still represents a proper understanding of the intersection of excessive force and qualified immunity analyses. The year after Fisher was decided, the Supreme Court in Saucier clarified that the inquiries for excessive force and qualified immunity are distinct. Saucier, 533 U.S. at 204, 121 S.Ct. 2151. Even when an arresting officer’s alleged use of force was not objectively reasonable, the officer may be shielded from suit by the doctrine of qualified immunity because the qualified immunity inquiry focuses on the question of whether the officer reasonably could have been mistaken about the applicable legal constraints. See id. at 204-06, 121 S.Ct. 2151.[3] Assuming that the qualified immunity issue in Fisher was correctly decided, the case is not helpful outside the context of Fourth Amendment cases.
In Catone, the court did not directly address the question of whether it was appropriate to give a jury instruction on the qualified immunity defense. The issue before the court was whether the court had jurisdiction under 28 U.S.C. § 1291 to hear an appeal from the district court’s rejection of the qualified immunity defense at the summary judgment stage. Catone, 149 F.3d at 158-59. Such orders are ap-pealable when they turn on “a legal issue that can be decided with reference only to undisputed facts and in isolation from the remaining issues of the case.” Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, *1020 132 L.Ed.2d 238 (1995) (internal quotation omitted); see also Behrens v. Pelletier, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). In Catone, the court held that the district court’s order was not immediately appealable because there remained questions of fact with regard to plaintiffs status, i.e., was she in fact a deputy or were there sufficient facts to establish that an individual in Defendant Spielmann’s shoes reasonably would have believed plaintiff was a deputy. While described generally as qualified immunity questions, the first question concerned whether plaintiff had a protected property interest which would prohibit her discharge without a pre-termi-nation hearing. If she was a deputy, she had no protected property right. However, if she was not a deputy, but Defendant Spielmann had reason to believe she was, Spielmann was immune from liability because he relied on the cited civil service law which permits termination of an individual holding the position of deputy without a pre-termination hearing. Catone, 149 F.3d at 160. As regards the qualified immunity analysis, Catone fits within the “extraordinary circumstances” rule defined by Harlow, Lutz, Roska, and Walker.

. Maestas concedes she did not object to the qualified immunity instruction and that a plain error scope of review applies. “Courts repeatedly have cautioned that the plain error exception is limited to exceptional cases where the error 'has seriously affected the fairness, integrity or public reputation of judicial proceedings.' ” Aspen Highlands Skiing Corp. v. Aspen Skiing Co., 738 F.2d 1509, 1516 (10th Cir.1984) (quoting Rowe International, Inc. v. J-B Enterprises, Inc., 647 F.2d 830, 835 (8th Cir.1981)); see also 9A C.Wright & A. Miller, Federal Practice and Procedure § 2558, at 462 (1995) ("Actual reversals on the basis of plain error are rather infrequent, though they have become more numerous in recent years.”).

. Guffey, like Fisher v. Memphis, 234 F.3d 312 (6th Cir.2000), and unlike our present case, involved the issue of Fourth Amendment reasonableness which often turns on resolution of contested facts.

. Under Graham v. Connor, 490 U.S. 386, 388, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), the Fourth Amendment excessive force inquiry requires courts to consider whether an arresting officer's use of force was objectively reasonable. In Saucier, the petitioner argued that the qualified immunity inquiry was redundant in cases analyzed under Graham. Saucier, 533 U.S. at 204, 121 S.Ct. 2151. The Court rejected that position, stating that "[t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.” Id. at 205, 121 S.Ct. 2151 (emphasis added).