FILED
United States Court of Appeals
Tenth Circuit

December 22, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BERTHA GONZALES; JADE
GONZALES,

      Plaintiffs - Appellants,

v.

WILLIAM DURAN; STEVE HALL;
RICHARD DILLEY; MARY
KENDRICK, in their individual
capacities; CITY OF
ALBUQUERQUE,

      Defendants - Appellees.

No. 08-2184

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 01-CV-00898)**

---

Paul Kennedy (Mary Y.C. Han and Darin M. Foster, with him on the briefs) of
Kennedy & Han, P.C., Albuquerque, New Mexico, for Plaintiffs - Appellants.

Kathryn Levy, Deputy City Attorney, City of Albuquerque (Lisa Entress Pullen of
Civerolo, Gralow, Hill & Curtis, P.A., with her on the brief), Albuquerque, New
Mexico, for Defendants - Appellees.

---

Before **KELLY**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

---

**KELLY**, Circuit Judge.

Plaintiffs-Appellants Bertha and Jade Gonzales appeal from the district court's judgment on a jury verdict in favor of Defendants-Appellees police officers, William Duran, Steve Hall, Richard Dilley, and Mary Kendrick, and the City of Albuquerque. Plaintiffs maintain that the district court[1] improperly submitted the issue of qualified immunity (for the defendant police officers) to the jury. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm finding harmless error.

Background

In this federal civil rights action, Plaintiffs claimed that the Defendants violated Fourth and Fourteenth Amendment rights based upon an unlawful detention and interrogation during an investigation. Aplt. Br. at 2. On June 14, 1999, Sam Gonzales, the husband of Bertha Gonzales and father of Jade Gonzales, was shot when Jade went to get a gun for Sam. Aplt. App. 65. Jade was 12 years old at the time and Sam died shortly thereafter. Aplt. App. 65. The police suspected that Sam was murdered by members of his family. Aplt. App. 370. The case was submitted to the jury on two basic claims.

The first claim was that Plaintiffs were detained without probable cause in violation of their Fourth Amendment rights as incorporated by the Fourteenth

_____

[1] The case was tried to a magistrate judge by consent.

Amendment. This claim ran against Defendants Duran, Hall and Dilley and arose out the following facts. On July 12, 1999, Albuquerque Police Department officers obtained a warrant to install a listening device in the Gonzales's home. Aplt. App. 374-78. The warrant authorized the officers to install the device by a ruse. Apt. App. 378. The ruse involved telling the Plaintiffs and their neighbors that, because a fictional armed burglar was in the area, evacuation of the "danger zone" was necessary. Aplt. App. 379-80. Bertha Gonzales returned from a grocery trip to find police officers on her street. Aplt. App. 527-28. An officer told Bertha that because of a hostage situation involving a gun, she could not return to her home. Aplt. App. 527-31. At the officer's instruction, Bertha and her children, including Jade, waited in a police mobile unit for an hour-and-a-half to two hours. Aplt. App. 530.

The second claim was that Jade was deprived of her substantive due process rights as guaranteed by the Fourteenth Amendment—specifically, the right to be free of arbitrary and abusive governmental conduct that shocks the conscience. This claim ran against all of the individual Defendants and stemmed from Jade's arrest on the night of August 7, 1999. Plaintiffs contended that APD officers interrogated Jade without advising her of her right to have her attorney or mother present, and refused Jade access to her attorney or mother. Aplt. App. 69. Plaintiffs disputed that Jade waived her rights. Aplt. App. 69-70.

The Defendant officers raised qualified immunity as an affirmative defense

-3-

to both claims.  Aplt. App. 157.  The district court denied Defendants' motion for judgment as a matter of law, as well as denying the Defendant officers qualified immunity—both at the close of the Plaintiffs' case-in-chief and at the close of the Defendants' case.  Aplt. App. 620-28; Aplt. App. 635.  The court instructed the jury on the Plaintiffs' unlawful detention and unlawful interrogation claims under 42 U.S.C. § 1983.  Aplt. App. 148-53.  Over Plaintiffs' objections, the court also instructed the jury on qualified immunity.[2]

---

[2]  The court instructed:

> If you find that one or more of the Plaintiffs have proven their claims, you must then consider the Defendants' affirmative defenses that their conduct was objectively reasonable in light of the legal rules clearly established at the time of the incident and that they are therefore not liable.  This reasonableness inquiry is an objective one: the question is whether the officer's actions are objectively reasonable in light of the fact and circumstances [sic] confronting the officer, without regard to the officer's underlying intent or motivation.

> Police officers are presumed to know about the clearly established constitutional rights of citizens.  In this case, citizens have a clearly established right to be free from an unreasonable seizure.  The Plaintiffs are not required to prove that Defendant(s) acted with the specific knowledge of this constitutional right.

> If, after considering the scope of discretion and responsibility generally given to police officers in the performance of their duties, and after considering all of the surrounding circumstances of the case as they would have reasonably appeared at the time of the seizure, you find by a preponderance of the evidence that Defendant(s) had an objectively reasonable belief that their actions would not violate the constitutional rights of the Plaintiffs, then you cannot find the

(continued...)

-4-

Plaintiffs objected to this instruction on the ground that it put "the issue of qualified immunity to the jury." Aplt. App. 637. They noted that it was adapted from a Fifth Circuit pattern jury instruction, see Fifth Circuit Pattern Jury Instr. Civ. 10.1 at 126-27 (2009 rev.), and a note accompanying the instruction explained that where there is agreement as to the historical facts, a court must resolve the issue of qualified immunity, not a jury. Id. at 126 n.2 (citing Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994)). The underlying historical facts going to qualified immunity were not in dispute, Plaintiffs argued, so "the issue of the availability of the qualified immunity defense must be resolved at the summary judgment stage by the court, not in a trial by the jury." Aplt. App. 638.

The court also provided the jury with special interrogatories. Aplt. App. 179-83. Several are important to this appeal and are set out below.[3]

---

[2](...continued)
Defendant(s) liable even if one or more of the Plaintiffs' rights were in fact violated as a result of Defendant(s)' action.

Aplt. App. 157.

[3] The special interrogatories provided in pertinent part (with the jury's answers indicated by a check mark):

1. Did any of the following Defendants violate Jade Gonzales' Fourth Amendment right not to be detained without probable cause?

| | | |
|---|---|---|
| William Duran | Yes _____ | No _____✔ |
| Steve Hall | Yes _____ | No _____✔ |
| Richard Dilley | Yes _____ | No _____✔ |

(continued...)

-5-

[3](...continued)

. . . . If you answered "No" to all of the above Defendants, please go to Question No. 2.
. . . .

2. Did any of the following Defendants violate Bertha Gonzales' Fourth Amendment right not to be detained without probable cause?

William Duran      Yes _____    No _____✔
Steve Hall         Yes _____    No _____✔
Richard Dilley     Yes _____    No _____✔

. . . . If you answered "No" to all of the above Defendants, please go to Question No. 3.
. . . .

3. Did Defendant William Duran in his supervisory capacity participate and acquiesce in the Defendants Hall, Dilley and Kendrick's interrogation?

Yes _____    No _____✔

. . . . If you answered "No," go to Question No. 4.
. . . .

4. Was each Defendant's conduct objectively reasonable as explained to you in the jury instructions?

William Duran      Yes _____✔No _____
Steve Hall         Yes _____✔No _____
Richard Dilley     Yes _____✔No _____

Please answer Question No. 5.

5. Did any of the following Defendants violate Jade Gonzales' Fourteenth Amendment Right to be free of arbitrary and abusive governmental conduct that shocks the conscience?

William Duran      Yes _____    No _____✔
Steve Hall         Yes _____    No _____✔
Richard Dilley     Yes _____    No _____✔
Mary Kendrick      Yes _____    No _____✔

(continued...)

-6-

Question No. 1 asked whether individual Defendants (Duran, Hall, and Dilley) violated the Jade Gonzales's "Fourth Amendment right to not be detained without probable cause." Aplt. App. 179. Question No. 2 asked the same question regarding Bertha Gonzales's Fourth Amendment rights. Aplt. App. 180. The jury answered both questions "No" as to each defendant. Aplt. App. 179-80. To Question No. 3, whether Duran as supervisor "participate[d] and acquiesce[d] in . . . Hall, Dilley, and Kendrick's interrogation," the jury checked "No." Aplt. App. 179-80. The interrogatories then instructed that if the jury answered "No" to Question No. 3, it was to proceed to Question No. 4 on qualified immunity. After a question on causation (which would not have applied given the jury's answers), the interrogatories instructed "If you answered 'No' to all of the three previous questions *or* the sub-parts, please go to Question No. 5." Aplt. App. 179-80. The jury then proceeded to answer Question No. 4: "Was each Defendant's conduct objectively reasonable as explained to you in the jury instructions?" The jury answered "Yes" as to each individual Defendant. Aplt. App. 181. Finally, the jury proceeded to Question No. 5: "Did any of the following Defendants violate

---

[3](...continued)
. . . . If you answered "No" to all of the above Defendants, and you answered "No" to Questions 1, 2, and 3, or the subparts, then you are not to answer any further questions.

Aplt. App. 179-181.

Jade Gonzales' Fourteenth Amendment Right to be free of arbitrary and abusive governmental conduct that shocks the conscience?"  The jury answered "No" as to each individual Defendant.  Aplt. App. 181.  Based on the jury's verdict, the court entered judgment on July 31, 2008.  Aplt. App. 184.

## Discussion

We review de novo whether the court erroneously instructed the jury on the applicable law.  Sherouse v. Ratchner, 573 F.3d 1055, 1059 (10th Cir. 2009).  "Despite this standard of review, we do not require perfection, but 'we must be satisfied that, upon hearing the instructions, the jury understood the issues to be resolved and its duty to resolve them." Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1250 (10th Cir. 2000) (internal quotation marks omitted).  This court reviews de novo both a district court's ruling on qualified immunity, Farmer v. Perrill, 288 F.3d 1254, 1259 (10th Cir. 2002), and the submission of qualified immunity to the jury.  Maestas v. Lujan, 351 F.3d 1001, 1007 (10th Cir. 2003).

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (internal quotation marks omitted).  Therefore, qualified immunity requires four determinations: (1) what actually happened, (2) whether the plaintiff asserted a violation of a constitutional or

statutory right, (3) whether the law had clearly established that right, and (4) whether an objectively reasonable defendant would have understood his conduct to violate that clearly established right.  See Maestas, 351 F.3d at 1006-07.

Qualified immunity is "almost always" a question of law.  Keylon v. City of Albuquerque, 535 F.3d 1210, 1217 (10th Cir. 2008).  Like many other questions of law raised in pre-trial motions, the trial court often decides the issue before trial.  Id.  A trial court may submit a question of qualified immunity to the jury only "'*in exceptional circumstances'* [where] historical facts [are] so intertwined with the law that a jury question is appropriate as to whether a reasonable person in the defendant's position would have known that his conduct violated [the] right [at issue]."  Id. at 1217-18 (quoting Maestas, 351 F.3d at 1007).  Thus, the predicate for submitting a qualified immunity question to the jury is the existence of disputed issues of material fact — that is, the question of what actually happened.

Where such factual disputes are present, there are three possible ways for a trial court to submit the qualified immunity question to the jury.  First, the court could submit special interrogatories to the jury to establish the facts.  Based on the jury's findings, the court could then determine whether the defendant's conduct was objectively reasonable in light of the clearly established law.  Second, the judge could define the clearly established law for the jury.  Then, the court could instruct the jury to determine what the defendant actually did and

whether it was reasonable in light of the clearly established law defined by the judge. This second approach is the one apparently taken by the district court in this case. Third, the court could simply allow the jury to determine what the clearly established law is, what the defendant actually did, and whether the defendant's conduct was objectively reasonable in light of the clearly established law found by the jury. This last approach, of course, is clearly inappropriate.

Although our cases have allowed the second approach, they have done so only when narrow issues of disputed material fact are dispositive of the qualified immunity inquiry. Keylon, 535 F.3d at 1219. Consideration of the proper division of labor between courts and juries in civil actions suggests that the second approach should be used rarely for several reasons. First, an "essential characteristic" of the federal court system is that it "assigns the decisions of disputed questions of fact to the jury." Byrd v. Blue Ridge Coop., 356 U.S. 525, 537 (1958). Legal questions are reserved to the courts.

Second, in deciding whether a right is clearly established, an essential part of the qualified immunity inquiry, a court must assess whether the right was clearly established against a backdrop of the objective legal reasonableness of the actor's conduct. Keylon, 535 F.3d at 1218. Letting the jury determine whether the officer's actions were reasonable in light of the clearly established law has the potential of asking the jury to resolve a legal question.

Third, allowing the jury to decide qualified immunity almost always

-10-

generates an issue on appeal as to whether the circumstances were exceptional enough to warrant such a procedure.  In those few cases where qualified immunity may turn on a jury's resolution of discrete factual questions, we think that the better approach is for the court to submit special interrogatories to the jury to establish the facts.[4]  We think that such a procedure is fully consistent with, and indeed better supported by, our past cases.

In Lutz v. Weld County School District No. 6, we held that a court may instruct the jury on qualified immunity only where parties raise "a fact issue as to whether there were exceptional circumstances such that a reasonable person in [the defendants'] positions would not have known of the relevant legal standard." 784 F.2d 340, 343 (10th Cir. 1986).  Because no disputed facts material to qualified immunity existed, "the jury instruction on immunity was erroneously given."  Id.  However, we held the error to be harmless upon observing that the court's charge regarding the plaintiff's constitutional rights was clear and "that the jury was given no role in deciding whether the law was clearly established."  Id.

---

[4]  Such fact-finding interrogatories require the court to focus on which disputed facts are dispositive of the qualified immunity inquiry and ensures the proper allocation of responsibility between the judge and jury.  Once the jury determines the purely historical facts, the judge then decides the three legal questions of qualified immunity: whether the actions violated the plaintiff's constitutional rights, whether those constitutional rights were clearly established, and whether the objectively reasonable defendant "would have known that his conduct violated that right."  Maestas, 351 F.3d at 1007.

-11-

Our decision in Walker v. Elbert applied a similar harmless error analysis. 75 F.3d 592 (10th Cir. 1996). The trial court in Walker asked the jury whether, in light of clearly established law, a person in the defendant's "position [should] reasonably have been aware of this law." Id. at 598. Citing circuit precedent, we noted that "a defendant may rely on special circumstances to raise an issue of fact to be determined by a jury." Id. (citing Cannon v. City & County of Denver, 998 F.2d 867, 876 (10th Cir. 1993); Lutz, 784 F.2d 340). Following Lutz, we found it dispositive that the defendant "presented evidence of circumstances which would entitle the jury to find that a reasonable person in his position would not have known of the relevant legal standards." Id. at 599. Therefore, "[w]hether [the defendant] was entitled to immunity as a matter of law, or whether he was entitled to immunity under a finding of fact by the jury, we find there was no error on the issue of the immunity defense." Id. This summary treatment is not exactly clear. Either the defendant was entitled to qualified immunity as a matter of law (in which case the issue was not a jury question) or the disputed facts raised a proper jury question. One of the two approaches must have been error. The most sensible construction of Walker, especially in light of our nod to Cannon and Lutz, is that we deemed the jury instruction to be harmless error. In other words, because the jury could properly decide disputed historical facts, the erroneous submission of the broader legal question of objective reasonableness to the jury was harmless.

-12-

Our most recent cases favor a narrow approach where a jury decides only disputed historical facts underlying a qualified immunity defense. In Maestas v. Lujan, we held "that a contested issue of fact that is material to the qualified immunity analysis gives rise to a jury question." 351 F.3d at 1008. Nonetheless, we approved an instruction allowing the jury to evaluate the objective reasonableness of a defendant's conduct. Id. at 1009-10. We did so only because specific key, disputed facts were "dispositive of the qualified immunity issue." Id. at 1010. We emphasized this point: "A jury question exists only when a disputed issue of material fact concerning the objective reasonableness of the defendant's actions exists." Id.

Relying heavily on Maestas, this court in Keylon held that the district court erroneously submitted the question of qualified immunity to the jury. Keylon, 535 F.3d at 1218. "Because any factual dispute in this case does not go to the question of the objective reasonableness of [the defendant officer's] actions, this case is not an exceptional circumstance, and the qualified immunity question should not have been submitted to the jury." Id. at 1219-20 (internal quotation marks omitted). Keylon clarified that exceptional circumstances exist only where the jury must decide disputed historical facts.

In this case, had the parties disputed historical facts crucial to the qualified immunity determination, the trial court could have submitted those facts to the jury for a determination. Plaintiffs have consistently argued, both below and on

appeal, that the facts material to the Fourth and Fourteenth Amendment claims were not disputed and therefore the objective reasonableness question was entirely legal. See Aplt. Br. at 9, 14-16; Aplt. App. 638. On the other hand, the Defendants argue generally that there were disputed facts on the Fourth Amendment claim going to objective reasonableness, and specifically that there were disputed facts concerning Plaintiff Jade Gonzales's Fourteenth Amendment claim, such as whether Defendant Duran asked her any questions, whether Jade was allowed to use the bathroom and the length of her detention. Aplee. Br. at 15-16, 21, 29. The court instructed the jury on the qualified immunity defense and submitted the entire issue to the jury. Aplt. App. 157, 181. This was certainly error as to the Fourth Amendment claim because no factual disputes dispositive of the qualified immunity inquiry existed.[5]

Defendants argue that any error in submitting the question of objective reasonableness to the jury was harmless because the jury's other answers indicated a total defense verdict. Aplee. Br. at 14-15. We agree. "Unless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or

---

[5] The qualified immunity interrogatory followed interrogatories on the Fourth Amendment claims, and preceded an interrogatory on the Fourteenth Amendment claim.

-14-

order." Fed. R. Civ. P. 61. "An erroneous jury instruction requires reversal . . . only if the error is determined to have been prejudicial, based on a review of the record as a whole." Sherouse, 573 F.3d at 1059 (internal quotation marks omitted). See also World Wide Ass'n of Specialty Programs v. Pure, Inc., 450 F.3d 1132, 1139 (10th Cir. 2006) ("Even if the district court erred, we will affirm as long as the error is harmless in the context of the trial as a whole."). As reflected in the special interrogatories and resulting judgment, the jury decided the Plaintiffs' claims on the merits and determined that the individual Defendants were not liable. Aplt. App. at 179-81, 184. This obviated the need for an affirmative defense of qualified immunity.

Plaintiffs suggest that the qualified immunity instruction was not harmless. The instruction confused the jury and resulted in prejudice, their argument goes, because the trial court had already denied the Defendants' renewed motion for judgment as a matter of law. Aplt. Br. at 13. "By requesting that the jury consider an issue already resolved as a matter of law by the court, the trial judge created a situation of inherent jury confusion." Aplt. Br. at 14. This argument is counter-factual: the trial judge explained that "[t]he jury will be instructed on the defense of qualified immunity and at this point, I think I'll leave it up to them as to whether they feel that that's a valid defense." Aplt. App. 627-28. Thus, the trial judge did not make a ruling on qualified immunity. Moreover, even had the issue been decided, the qualified immunity issue may be reviewed after trial

through a post-trial motion.  Cassady v. Goering, 567 F.3d 628, 634 (10th Cir. 2009).

Though Plaintiffs argue "inherent jury confusion," Aplt. Br. at 13-14, Aplt. Reply Br. at 6, they cannot point to any remark or finding by the trial judge that might have confused the jury.  Without more, speculation is not sufficient for us to conclude that the court confused the jury merely by instructing them (and having them complete an interrogatory) on an issue that the court should have decided.  In light of the jury's answers on liability, the error was harmless.

Finally, we note that the City of Albuquerque is before this court on this problematic qualified immunity jury instruction for the second time in about a year-and-a-half.  See Keylon, 535 F.3d at 1212.  At trial, which in fairness concluded about one week *before* our decision in Keylon, the City told the trial court that the City "routinely puts this in."  Aplt. App. 648.  Given our clear instructions in Keylon and this case, we trust that a reevaluation of that practice has already or will occur.

AFFIRMED.

08-2184, *Gonzales v. Duran, et al.*
Ebel, J., Concurring.

I join the majority opinion completely and write this brief concurrence only to emphasize one point: if a district court submits the question of qualified immunity to the jury because there are disputed historical facts material to resolving the immunity question, the district court should submit to the jury only the disputed factual contentions underlying the immunity question and should reserve for itself the legal question of objective reasonableness.

I agree with the majority that a court may submit the issue of qualified immunity to the jury only where there is a dispute of fact pivotal to determining whether the defendant is entitled to qualified immunity. I also agree with the majority that there were no such material facts in dispute with respect to the Gonzales' Fourth Amendment claims, but that the error in submitting the qualified immunity question to the jury on that claim was harmless. See supra at 14-15.

However, I would prefer to conclude unequivocally that there were disputed material facts with respect to Jade Gonzales' Fourteenth Amendment claim. Thus, in my opinion, if the qualified immunity defense was submitted to the jury regarding the Fourteenth Amendment claim (and the majority opinion correctly notes that that proposition is far from clear), then I would conclude that there would have been no error in submitting that defense to the jury had the submission been limited to the factual components. But, I think the district court

erred in phrasing the qualified immunity interrogatory in a manner that allowed the jury to resolve the legal question of whether the defendants' conduct was "objectively reasonable" in light of the clearly established law. Nonetheless, I would find that Gonzales waived her right to rely on this error, and even if she had not, the error was harmless. On this basis, I concur with the majority and agree that this court should affirm.

## DISCUSSION

A. The Fourteenth Amendment Claim

Normally, a district court must resolve the question of qualified immunity. Keylon v. City of Albuquerque, 535 F.3d 1210, 1217 (10th Cir. 2008). A district court may submit the question of qualified immunity to the jury only where historical facts necessary to resolution of that question are disputed, see Maestas v. Lujan, 351 F.3d 1001, 1007 (10th Cir. 2003); that is, if a district court were to view the disputed facts first in the light most favorable to the plaintiff and then in the light most favorable to the defendant, the district court would reach a different conclusion as to the qualified immunity question under the two views of the facts. In such a situation, a reasonable jury could accept either version of the facts, and the resolution of the qualified immunity issue would turn on which version the jury accepts.

In this case, there were disputed facts pivotal to whether the defendants' conduct in interrogating Jade Gonzales was "objectively reasonable" in light of clearly established law. Jade Gonzales, who was twelve at the time of the interrogation, presented evidence from which a jury could find that Officers Hall, Dilley, Duran, and Kendrick severely berated Gonzales with curse words, threats of jail, and comments that her mom did not "give a shit about [her]" (Aplt. App. at 569-27), questioned her about her father's sexual affairs, caused her to soil herself in front of three adult men, intentionally ignored her requests for an attorney, and intentionally did not <u>Mirandize</u> her. Viewed in the light most favorable to the defendants, however, a jury could find that Gonzales was not abusively yelled at, Officer Duran was never even present during the interview, the interview was a spontaneous, short discussion, Gonzales never requested an attorney, and Gonzales never wet herself as she was made to wait only a short time to use the restroom. If the jury accepted Gonzales' version of the facts, the defendants' conduct would not be objectively reasonable in light of Gonzales' clearly established substantive due process rights. However, if the jury accepted the defendants' version of the facts, a court would reach the contrary legal conclusion. Thus, the disputed facts are material to the qualified immunity issue, and the district court did not err in submitting the qualified immunity question to the jury.

B.  The Phraseology of the Qualified Immunity Question

While the district court may not have erred in submitting this particular qualified immunity question to the jury, it did err in how it stated the immunity question to the jury.  Specifically, to the extent the interrogatory asked the jury to decide whether the defendants' conduct was objectively reasonable, the district court erred.  Stating that a district court may "submit the question of qualified immunity to the jury" when there are material disputed facts is somewhat misleading.  Whether a defendant's conduct is objectively reasonable is always a question of law for the court.  The only reason a district court does not resolve the qualified immunity question before the case goes to the jury is because there are underlying disputed historical facts necessary to resolution of that legal issue. The jury needs only to resolve those disputed facts to allow the court to resolve the legal question of objective reasonableness.  Thus, the district court should have submitted specific fact-finding interrogatories to the jury that would have allowed it to resolve the material disputed facts, but the district court should have reserved for itself the question of whether the defendants' conduct was objectively reasonable in light of clearly established law.  See, e.g., Curley v. Klem, 499 F.3d 199, 211 (3d Cir. 2007) ("[W]hether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury . . . [and] [w]hen a district court

-4-

submits that question of law to a jury, it commits reversible error." (internal citation omitted)); Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007) ("Once the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court."); Willingham v. Crooke, 412 F.3d 553, 559-60 (4th Cir. 2005); Littrell v. Franklin, 388 F.3d 578, 585-86 (8th Cir. 2004); Pouillon v. City of Owosso, 206 F.3d 711, 718-19 (6th Cir. 2000); Warlick v. Cross, 969 F.2d 303, 305-06 (7th Cir. 1992); Prokey v. Watkins, 942 F.2d 67, 73 (1st Cir. 1991).

In this case, however, the district court's improper submission of the "objectively reasonable" question to the jury does not mandate reversal. First, Gonzales waived this ground for relief by failing to object at trial to the phraseology of the interrogatory. See Fischer v. Forestwood Co., 525 F.3d 972, 978 n.2 (10th Cir. 2008) ("[A]rguments not raised in the district court are waived on appeal." (citing Rosewood Servs., Inc. v. Sunflower Diversified Servs., Inc., 413 F.3d 1163, 1167 (10th Cir. 2005)). Second, even if Gonzales had raised this issue, the error would be harmless because, as the majority explained in its harmless error analysis, supra at 14, the jury separately reached the merits of Jade Gonzales' Fourteenth Amendment claim and concluded that the defendants committed no constitutional violation. Because this conclusion obviated the need

-5-

to reach the merits and Gonzales has not otherwise shown prejudice, the error in phrasing the immunity question was harmless. See supra at 14-15.

I think a court should never ask the jury to resolve the legal question of whether a defendant's conduct is objectively reasonable. Nonetheless, I do not find it necessary to quarrel with the majority or to urge en banc review of our precedents because of the way I resolve this issue.

I concur with the majority's judgment in this case and agree that this court should affirm.