PAUL KELLY, JR., Circuit Judge.
Plaintiffs-Appellants Bertha and Jade Gonzales appeal from the district court’s judgment on a jury verdict in favor of Defendants-Appellees police officers, William Duran, Steve Hall, Richard Dilley, and Mary Kendrick, and the City of Albuquerque. Plaintiffs maintain that the district court[1] improperly submitted the issue of qualified immunity (for the defendant police officers) to the jury. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm finding harmless error.

Background

In this federal civil rights action, Plaintiffs claimed that the Defendants violated Fourth and Fourteenth Amendment rights based upon an unlawful detention and interrogation during an investigation. Aplt. Br. at 2. On June 14, 1999, Sam Gonzales, the husband of Bertha Gonzales and father of Jade Gonzales, was shot when Jade went to get a gun for Sam. Aplt.App. 65. Jade was 12 years old at the time and Sam died shortly thereafter. Aplt.App. 65. *857 The police suspected that Sam was murdered by members of his family. Aplt. App. 370. The case was submitted to the jury on two basic claims.
The first claim was that Plaintiffs were detained without probable cause in violation of their Fourth Amendment rights as incorporated by the Fourteenth Amendment. This claim ran against Defendants Duran, Hall and Dilley and arose out the following facts. On July 12, 1999, Albuquerque Police Department officers obtained a warrant to install a listening device in the Gonzales’s home. ApltApp. 374-78. The warrant authorized the officers to install the device by a ruse. Apt. App. 378. The ruse involved telling the Plaintiffs and their neighbors that, because a fictional armed burglar was in the area, evacuation of the “danger zone” was necessary. ApltApp. 379-80. Bertha Gonzales returned from a grocery trip to find police officers on her street. ApltApp. 527-28. An officer told Bertha that because of a hostage situation involving a gun, she could not return to her home. ApltApp. 527-31. At the officer’s instruction, Bertha and her children, including Jade, waited in a police mobile unit for an hour-and-a-half to two hours. ApltApp. 530.
The second claim was that Jade was deprived of her substantive due process rights as guaranteed by the Fourteenth Amendment — specifically, the right to be free of arbitrary and abusive governmental conduct that shocks the conscience. This claim ran against all of the individual Defendants and stemmed from Jade’s arrest on the night of August 7, 1999. Plaintiffs contended that APD officers interrogated Jade without advising her of her right to have her attorney or mother present, and refused Jade access to her attorney or mother. ApltApp. 69. Plaintiffs disputed that Jade waived her rights. ApltApp. 69-70.
The Defendant officers raised qualified immunity as an affirmative defense to both claims. ApltApp. 157. The district court denied Defendants’ motion for judgment as a matter of law, as well as denying the Defendant officers qualified immunity— both at the close of the Plaintiffs’ case-in-chief and at the close of the Defendants’ case. ApltApp. 620-28; ApltApp. 635. The court instructed the jury on the Plaintiffs’ unlawful detention and unlawful interrogation claims under 42 U.S.G. § 1983. ApltApp. 148-53. Over Plaintiffs’ objections, the court also instructed the jury on qualified immunity.[2]
*858 Plaintiffs objected to this instruction on the ground that it put “the issue of qualified immunity to the jury.” Aplt.App. 637. They noted that it was adapted from a Fifth Circuit pattern jury instruction, see Fifth Circuit Pattern Jury Instr. Civ. 10.1 at 126-27 (2009 rev.), and a note accompanying the instruction explained that where there is agreement as to the historical facts, a court must resolve the issue of qualified immunity, not a jury. Id. at 126 n. 2 (citing Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir.1994)). The underlying historical facts going to qualified immunity were not in dispute, Plaintiffs argued, so “the issue of the availability of the qualified immunity defense must be resolved at the summary judgment stage by the court, not in a trial by the jury.” ApltApp. 638.
The court also provided the jury with special interrogatories. ApltApp. 179-83. Several are important to this appeal and are set out below.[3] Question No. 1 asked whether individual Defendants (Duran, Hall, and Dilley) violated the Jade Gonzales’s “Fourth Amendment right to not be detained without probable cause.” Aplt. App. 179. Question No. 2 asked the same question regarding Bertha Gonzales’s Fourth Amendment rights. ApltApp. 180. The jury answered both questions “No” as to each defendant. Aplt.App. 179-80. To Question No. 3, whether Duran as supervisor “participate^ and aequiesce[d] in ... Hall, Dilley, and Kendrick’s interrogation,” the jury cheeked “No.” ApltApp. 179-80. The interrogatories then instructed that if the jury answered “No” to Question No. 3, it was to proceed to Question No. 4 on qualified immunity. After a question on causation (which would not have applied given the jury’s answers), the interrogatories instructed “If you answered ‘No’ to all of the three previous questions or the sub-parts, please go to Question No. 5.” Aplt. App. 179-80. The jury then proceeded to *859 answer Question No. 4: “Was each Defendant’s conduct objectively reasonable as explained to you in the jury instructions?” The jury answered ‘Yes” as to each individual Defendant. Aplt.App. 181. Finally, the jury proceeded to Question No. 5: “Did any of the following Defendants violate Jade Gonzales’ Fourteenth Amendment Right to be free of arbitrary and abusive governmental conduct that shocks the conscience?” The jury answered “No” as to each individual Defendant. Aplt. App. 181. Based on the jury’s verdict, the court entered judgment on July 31, 2008. Aplt.App. 184.

Discussion

We review de novo whether the court erroneously instructed the jury on the applicable law. Sherouse v. Ratchner, 573 F.3d 1055, 1059 (10th Cir.2009). “Despite this standard of review, we do not require perfection, but “we must be satisfied that, upon hearing the instructions, the jury understood the issues to be resolved and its duty to resolve them.’” Smith v. Ingersoll-Rand, Co., 214 F.3d 1235, 1250 (10th Cir.2000) (internal quotation marks omitted). This court reviews de novo both a district court’s ruling on qualified immunity, Farmer v. Perrill, 288 F.3d 1254, 1259 (10th Cir.2002), and the submission of qualified immunity to the jury. Maestas v. Lujan, 351 F.3d 1001, 1007 (10th Cir.2003).
Qualified immunity “protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Pearson v. Callahan, — U.S. -, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (internal quotation marks omitted). Therefore, qualified immunity requires four determinations: (1) what actually happened, (2) whether the plaintiff asserted a violation of a constitutional or statutory right, (3) whether the law had clearly established that right, and (4) whether an objectively reasonable defendant would have understood his conduct to violate that clearly established right. See Maestas, 351 F.3d at 1006-07.
 Qualified immunity is “almost always” a question of law. Keylon v. City of Albuquerque, 535 F.3d 1210, 1217 (10th Cir.2008). Like many other questions of law raised in pre-trial motions, the trial court often decides the issue before trial. Id. A trial court may submit a question of qualified immunity to the jury only “ ‘in exceptional circumstances’ [where] historical facts [are] so intertwined with the law that a jury question is appropriate as to whether a reasonable person in the defendant’s position would have known that his conduct violated [the] right [at issue].” Id. at 1217-18 (quoting Maestas, 351 F.3d at 1007). Thus, the predicate for submitting a qualified immunity question to the jury is the existence of disputed issues of material fact — that is, the question of what actually happened.
Where such factual disputes are present, there are three possible ways for a trial court to submit the qualified immunity question to the jury. First, the court could submit special interrogatories to the jury to establish the facts. Based on the jury’s findings, the court could then determine whether the defendant’s conduct was objectively reasonable in light of the clearly established law. Second, the judge could define the clearly established law for the jury. Then, the court could instruct the jury to determine what the defendant actually did and whether it was reasonable in light of the clearly established law defined by the judge. This second approach is the one apparently taken by the district court in this case. Third, the court could *860 simply allow the jury to determine what the clearly established law is, what the defendant actually did, and whether the defendant’s conduct was objectively reasonable in light of the clearly established law found by the jury. This last approach, of course, is clearly inappropriate.
Although our cases have allowed the second approach, they have done so only when narrow issues of disputed material fact are dispositive of the qualified immunity inquiry. Keylon, 535 F.3d at 1219. Consideration of the proper division of labor between courts and juries in civil actions suggests that the second approach should be used rarely for several reasons. First, an “essential characteristic” of the federal court system is that it “assigns the decisions of disputed questions of fact to the jury.” Byrd v. Blue Ridge Coop., 356 U.S. 525, 537, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). Legal questions are resex-ved to the courts.
Second, in deciding whether a right is clearly established, an essential part of the qualified immunity inquiry, a court must assess whether the right was clearly established agaixxst a backdrop of the objective legal reasonableness of the actor’s conduct. Keylon, 535 F.3d at 1218. Letting the jury determine whether the officer’s actions were reasonable in light of the clearly established law has the potential of asking the jury to resolve a legal question.
Third, allowing the jury to decide qualified immunity almost always generates an issue on appeal as to whether the circumstances were exceptional enough to warrant such a procedmie. In those few cases where qualified immunity may turn on a jury’s resolution of discrete factual questions, we think that the better approach is for the court to submit special interrogatories to the jury to establish the facts.[4] We think that such a procedure is fully consistent with, and indeed better supported by, our past cases.
In Lutz v. Weld County School District No. 6, we held that a court may instruct the jury on qualified immunity only where parties raise “a fact issue as to whether there were exceptional circumstances such that a reasonable person in [the defendants’] positions would not have known of the relevant legal standard.” 784 F.2d 340, 343 (10th Cir.1986). Because no disputed facts material to qualified immunity existed, “the jury instruction on immunity was erroneously given.” Id. However, we held the error to be harmless upon observing that the court’s charge regarding the plaintiffs constitutional rights was clear and “that the jury was given no role in deciding whether the law was clearly established.” Id.
Our decision in Walker v. Elbert applied a similar harmless error analysis. 75 F.3d 592 (10th Cir.1996). The trial court in Walker asked the jury whether, in light of clearly established law, a person in the defendant’s “position [should] reasonably have been aware of this law.” Id. at 598. Citing circuit precedent, we noted that “a defendant may rely on special circumstances to raise an issue of fact to be determined by a jury.” Id. (citing Cannon v. City & County of Denver, 998 F.2d 867, 876 (10th Cir.1993); Lutz, 784 F.2d 340). Following Lutz, we found it dispositive *861 that the defendant “presented evidence of circumstances which would entitle the jury to find that a reasonable person in his position would not have known of the relevant legal standards.” Id. at 599. Therefore, “[w]hether [the defendant] was entitled to immunity as a matter of law, or whether he was entitled to immunity under a finding of fact by the jury, we find there was no error on the issue of the immunity defense.” Id. This summary treatment is not exactly clear. Either the defendant was entitled to qualified immunity as a matter of law (in which case the issue was not a jury question) or the disputed facts raised a proper jury question. One of the two approaches must have been error. The most sensible construction of Walker, especially in light of our nod to Cannon and Lutz, is that we deemed the jury instruction to be harmless error. In other words, because the jury could properly decide disputed historical facts, the erroneous submission of the broader legal question of objective reasonableness to the jury was harmless.
Our most recent cases favor a narrow approach where a jury decides only disputed historical facts underlying a qualified immunity defense. In Maestas v. Lujan, we held “that a contested issue of fact that is material to the qualified immunity analysis gives rise to a jury question.” 351 F.3d at 1008. Nonetheless, we approved an instruction allowing the jury to evaluate the objective reasonableness of a defendant’s conduct. Id. at 1009-10. We did so only because specific key, disputed facts were “dispositive of the qualified immunity issue.” Id. at 1010. We emphasized this point: “A jury question exists only when a disputed issue of material fact concerning the objective reasonableness of the defendant’s actions exists.” Id.
Relying heavily on Maestas, this court in Keylon held that the district court erroneously submitted the question of qualified immunity to the jury. Keylon, 535 F.3d at 1218. “Because any factual dispute in this case does not go to the question of the objective reasonableness of [the defendant officer’s] actions, this case is not an exceptional circumstance, and the qualified immunity question should not have been submitted to the jury.” Id. at 1219-20 (internal quotation marks omitted). Keylon clarified that exceptional circumstances exist only where the jury must decide disputed historical facts.
In this case, had the parties disputed historical facts crucial to the qualified immunity determination, the trial court could have submitted those facts to the jury for a determination. Plaintiffs have consistently argued, both below and on appeal, that the facts material to the Fourth and Fourteenth Amendment claims were not disputed and therefore the objective reasonableness question was entirely legal. See Aplt. Br. at 9, 14-16; Aplt.App. 638. On the other hand, the Defendants argue generally that there were disputed facts on the Fourth Amendment claim going to objective reasonableness, and specifically that there were disputed facts concerning Plaintiff Jade Gonzales’s Fourteenth Amendment claim, such as whether Defendant Duran asked her any questions, whether Jade was allowed to use the bathroom and the length of her detention. Aplee. Br. at 15-16, 21, 29. The court instructed the jury on the qualified immunity defense and submitted the entire issue to the jury. Aplt.App. 157, 181. This was certainly error as to the Fourth Amendment claim because no factual disputes dispositive of the qualified immunity inquiry existed.[5]
*862 Defendants argue that any error in submitting the question of objective reasonableness to the jury was harmless because the jury’s other answers indicated a total defense verdict. Aplee. Br. at 14-15. We agree. “Unless justice requires otherwise, no error in admitting or excluding evidence — or any other error by the court or a party — is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order.” Fed.R.Civ.P. 61. “An erroneous jury instruction requires reversal ... only if the error is determined to have been prejudicial, based on a review of the record as a whole.” Sherouse, 573 F.3d at 1059 (internal quotation marks omitted). See also World Wide Ass’n of Specialty Programs v. Pure, Inc., 450 F.3d 1132, 1139 (10th Cir.2006) (“Even if the district court erred, we will affirm as long as the error is harmless in the context of the trial as a whole.”). As reflected in the special interrogatories and resulting judgment, the jury decided the Plaintiffs’ claims on the merits and determined that the individual Defendants were not liable. Aplt.App. at 179-81, 184. This obviated the need for an affirmative defense of qualified immunity.
Plaintiffs suggest that the qualified immunity instruction was not harmless. The instruction confused the jury and resulted in prejudice, their argument goes, because the trial court had already denied the Defendants’ renewed motion for judgment as a matter of law. Aplt. Br. at 13. “By requesting that the jury consider an issue already resolved as a matter of law by the court, the trial judge created a situation of inherent jury confusion.” Aplt. Br. at 14. This argument is counter-factual: the trial judge explained that “[t]he jury will be instructed on the defense of qualified immunity and at this point, I think I’ll leave it up to them as to whether they feel that that’s a valid defense.” ApltApp. 627-28. Thus, the trial judge did not make a ruling on qualified immunity. Moreover, even had the issue been decided, the qualified immunity issue may be reviewed after trial through a post-trial motion. Cassady v. Goering, 567 F.3d 628, 634 (10th Cir.2009).
Though Plaintiffs argue “inherent jury confusion,” Aplt. Br. at 13-14, Aplt. Reply Br. at 6, they cannot point to any remark or finding by the trial judge that might have confused the jury. Without more, speculation is not sufficient for us to conclude that the court confused the jury merely by instructing them (and having them complete an interrogatory) on an issue that the court should have decided. In light of the jury’s answers on liability, the error was harmless.
Finally, we note that the City of Albuquerque is before this court on this problematic qualified immunity jury instruction for the second time in about a year-and-a-half. See Keylon, 535 F.3d at 1212. At trial, which in fairness concluded about one week before our decision in Keylon, the City told the trial court that the City “routinely puts this in.” ApltApp. 648. Given our clear instructions in Keylon and this case, we trust That a reevaluation of that practice has already or will occur.
AFFIRMED.

. The case was tried to a magistrate judge by consent.

, The court instructed:
If you find that one or more of the Plaintiffs have proven their claims, you must then consider the Defendants' affirmative defenses that their conduct was objectively reasonable in light of the legal rules clearly established at the time of the incident and that they are therefore not liable. This reasonableness inquiry is an objective one: the question is whether the officer's actions are objectively reasonable in light of the fact and circumstances [sic] confronting the officer, without regard to the officer's underlying intent or motivation.
Police officers are presumed to know about the clearly established constitutional rights of citizens. In this case, citizens have a clearly established right to be free from an unreasonable seizure. The Plaintiffs are not required to prove that Defendant(s) acted with the specific knowledge of this constitutional right.
If, after considering the scope of discretion and responsibility generally given to police officers in the performance of their duties, and after considering all of the surrounding circumstances of the case as they would have reasonably appeared at the time of the seizure, you find by a preponderance of the evidence that Defendant(s) had an objectively reasonable belief that their actions would not violate the constitutional rights of the Plaintiffs, then you cannot find the Defendant(s) liable even if one or more of the Plaintiffs’ rights were in fact violated as a result of Defendant(s)’ action.
Aplt.App. 157.

. The special interrogatories provided in pertinent part (with the jury’s answers indicated by a check mark):
1. Did any of the following Defendants violate Jade Gonzales’ Fourth Amendment right not to be detained without probable cause?
William Duran Yes_ No_/
Steve Hall Yes_ No_/
Richard Dilley Yes_ No_/
.... If you answered "No” to all of the above Defendants, please go to Question No. 2.
2. Did any of the following Defendants violate Bertha Gonzales’ Fourth Amendment right not to be detained without probable cause?
William Duran Yes__ No_/
Steve Hall Yes_ No_/
Richard Dilley Yes_ No_/
.... If you answered "No” to all of the above Defendants, please go to Question No. 3.
3. Did Defendant William Duran in his supervisory capacity participate and acquiesce in the Defendants Hall, Dilley and Kendrick’s interrogation?
Yes_ No_/
.... If you answered "No,” go to Question No. 4.
4. Was each Defendant's conduct objectively reasonable as explained to you in the jury instructions?
William Duran Yes_J No_
Steve Hall Yes_/ No_
Richard Dilley Yes_/ No_
Please answer Question No. 5.
5. Did any of the following Defendants violate Jade Gonzales' Fourteenth Amendment Right to be free of arbitrary and abusive governmental conduct that shocks the conscience?
William Duran Yes. No_/
Steve Hall Yes. No_/
Richard Dilley Yes. No_/
Mary Kendrick Yes. No_.J
.... If you answered “No” to all of the above Defendants, and you answered "No” to Questions 1, 2, and 3, or the subparts, then you are not to answer any further questions. ApltApp. 179-181.

. Such fact-finding interrogatories require the court to focus on which disputed facts are dispositive of the qualified immunity inquiry and ensures the proper allocation of responsibility between the judge and jury. Once the jury determines the purely historical facts, the judge then decides the three legal questions of qualified immunity: whether the actions violated the plaintiff's constitutional rights, whether those constitutional rights were clearly established, and whether the objectively reasonable defendant "would have known that his conduct violated that right.” Maestcis, 351 F.3d at 1007.

. The qualified immunity interrogatory followed interrogatories on the Fourth Amend *862 ment claims, and preceded an interrogatory on the Fourteenth Amendment claim.