**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SHANNON CAVANAUGH,

      Plaintiff-Appellant,

    v.

WOODS CROSS CITY, a Utah
municipal corporation, and DANIEL
DAVIS, an individual,

      Defendants-Appellees.

No. 11-4206

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NO. 08-CV-00032-TC)**

---

Kathleen E. McDonald (Bret M. Hanna with her on the briefs) Jones Waldo
Holbrook & McDonough PC, Salt Lake City, Utah, for Plaintiff-Appellant.

Peter Stirba (R. Blake Hamilton with him on the brief) Stirba & Associates, Salt
Lake City, Utah, for Defendants-Appellees.

---

Before **TYMKOVICH**, **GORSUCH**, and **HOLMES**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

      Shannon Cavanaugh suffered a serious head injury after being tasered by

Daniel Davis, a police officer for Woods Cross City, Utah. She filed an excessive

force claim under 42 U.S.C. § 1983 against the City and Davis. After an interlocutory appeal in which we concluded fact questions existed on the question of excessive force, her case went to a jury  The jury found for the City and Davis, and the district court entered judgment in their favor.

Cavanaugh raises several challenges to the district court's pretrial and trial rulings, including (1) its refusal to exclude testimony from Officer Davis concerning his perceptions and beliefs prior to the tasering incident, (2) its refusal to grant Cavanaugh a new trial due to insufficient evidence that she was an immediate threat, (3) its refusal to give the jury Cavanaugh's requested instruction for what constitutes "resisting arrest," and (4) its decision to submit the excessive force question to the jury.

We find no reversible error by the district court. The court properly submitted factual questions to the jury on the officer's use of force, and any stray testimony about the officer's state of mind was harmless. And the question of whether the officer violated Cavanaugh's right to be free from excessive force was properly submitted to the jury in this case because the balancing of the factors set out in *Graham v. Conner*, 490 U.S. 386 (1990), is a mixed question of law and fact.

Accordingly, exercising our jurisdiction under 28 U.S.C. § 1291, we reject all of Cavanaugh's grounds for appeal and AFFIRM.

# I. Background

## A.    *Factual Background*

Brad and Shannon Cavanaugh live in Woods Cross City, Utah. Officer Davis was first dispatched to their home on February 23, 2006, having received a neighbor's report of a suicidal woman.  Officer Davis, along with a fellow officer, entered the home and found Mrs. Cavanaugh clutching a handful of pills, with Mr. Cavanaugh attempting to keep her hands from her face.  Davis and the other officer forcibly removed the pills from Mrs. Cavanaugh's hands.  Davis's investigation confirmed that Mrs. Cavanaugh was suicidal.  For instance, Davis learned that there had been an argument during which Mrs. Cavanaugh had grabbed kitchen knives, and that Mr. Cavanaugh had managed to remove the knives from her hands.  Based on what he learned, Davis had Mrs. Cavanaugh involuntarily committed under Utah law to a hospital for a mental health evaluation.

Almost ten months later, on December 8, 2006, police were once again called to the Cavanaughs' home.  Mr. Cavanaugh had told the dispatcher that he and his wife had been drinking, that his wife was "looking for a fight," and that "[s]he grabbed a knife, and she has taken it outside."  Supp. App. 237–38.  When police officers arrived, Mr. Cavanaugh told them his wife had pushed him into a closet and shut the door.  Officer Davis responded to the call as well.  When he arrived, Davis spoke with Mr. Cavanaugh, who said that his wife had drunk three

or four shots of liquor and taken some painkillers. Mr. Cavanaugh repeated to Davis that his wife had grabbed a knife and was determined to kill herself. When Mr. Cavanaugh stated that police had been called to their home back in February, Davis recalled the prior incident. Davis then had Mr. Cavanaugh write down everything in a witness statement. Davis told Mr. Cavanaugh not to let Mrs. Cavanaugh back inside if she returned.

Davis then brought the witness statement outside to his patrol car. While outside, he noticed someone on the sidewalk near the Cavanaugh home walking towards him. There is some dispute about what happened next.

According to Davis's trial testimony, the individual was wearing a dark hooded sweatshirt, with the hood pulled over the head. The individual's hands were under the armpits and the individual was wearing no shoes. Davis suspected the individual may be Mrs. Cavanaugh. As the individual came closer to the house, Davis asked her if she was "Shannon." She said "no." Davis asked her who she was, but she gave no response. That is when Officer Davis knew the individual was Mrs. Cavanaugh.

Mrs. Cavanaugh then turned toward the house, walking rapidly across the lawn. Davis yelled at Mrs. Cavanaugh to stop, but she did not respond or slow down. Davis then ran up to Mrs. Cavanaugh, grabbed her arm, and again ordered her to stop. She shook free from his grasp and began running toward the front

door.  Officer Davis then drew his taser, aimed it at her back, and fired.  She immediately fell and struck her head on the concrete steps to the home.

A neighbor, James Murphy, had a slightly different account of what happened.  He testified at trial that Mrs. Cavanaugh's hands were at her side and not tucked under her armpits while she was walking.  He also said that while Davis turned to chase Mrs. Cavanaugh, Davis did not reach for her or shout to her before using his taser.

Either way, Mrs. Cavanaugh hit her head and was rushed to the hospital.  The blow on the concrete resulted in severe bleeding and pressure on her brain.  Mrs. Cavanaugh eventually had to undergo surgery to cauterize a hemorrhaging artery.  After she was released from the hospital, she complained of continuing headaches and cognitive and emotional difficulties resulting from the injury.

*B.     Procedural Background*

In March 2008, Cavanaugh filed a § 1983 excessive force suit against Woods Cross City and Officer Davis.  After discovery, the Defendants filed a motion for summary judgment on qualified immunity grounds.  The district court denied the motion, and, on appeal, we affirmed on the basis that fact questions remained.  *Cavanaugh v. Woods Cross City*, 625 F.3d 661 (10th Cir. 2010).  The central factual dispute concerned the confrontation between Davis and Mrs. Cavanaugh—whether (1) her hands were visible, and (2) Davis issued a warning before using force.  If neither was true, we concluded it was "clearly established"

an officer could not use a taser to subdue a "nonviolent misdemeanant." *Id.* at 667.

After remand, the case went to trial. At the conclusion of the trial, the jury returned a verdict for the Defendants, finding Cavanaugh had not proven that her right to be free from excessive force had been violated.

## II. Analysis

Cavanaugh argues there were numerous errors with her trial, both before it began and during it. She challenges a number of the district court's rulings: (1) denying a pretrial evidentiary motion seeking to limit Officer Davis's testimony; (2) refusing to grant Cavanaugh a new trial; (3) refusing to adopt her preferred jury instructions; and (4) allowing the jury to assess the constitutional reasonableness of Davis's conduct.

Because every claim concerns the proper legal standard for an excessive force claim, we first review that standard before considering each objection in turn.

### A. *Excessive Force Claim*

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures." Police officers can violate that right by employing excessive force when making a seizure or an arrest. Whether the force used by police officers is "excessive" or "reasonable" is an objective inquiry depending on the "facts and circumstances of each particular case."

*Graham v. Connor*, 490 U.S. 386, 396 (1989). The focus is on the facts confronting the officers, not "their underlying intent or motivation." *Id.* at 397. Moreover, reasonableness is judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

Factors to consider include, but are not limited to, "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* An officer who has a reasonable but mistaken belief about a suspect's dangerousness may nevertheless be justified in using more force than is necessary. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1314 (10th Cir. 2009).

### B.     Pretrial Evidentiary Motion

Cavanaugh argues the district court erred in denying a motion in limine to exclude testimony by Officer Davis concerning his "subjective mind state." While we agree with her as a general matter, the court's ruling did not prejudice Cavanaugh's trial.

In her motion to the district court, Cavanaugh argued that because the *Graham* standard for the use of force was an objective one, testimony concerning Officer Davis's subjective fears about what Cavanaugh would do if she entered the house was irrelevant and thus should be excluded. The Defendants argued that even with an objective standard, Officer Davis's testimony concerning what

he *thought* Cavanaugh might do was relevant to determining what a reasonable officer would do in a similar situation. The district court denied the motion, explaining that while the standard was objective, preventing Davis's testimony about his beliefs would leave a hole in the evidence and prejudice the Defendants. This court reviews a district court's evidentiary rulings and rulings on motions in limine for abuse of discretion. *United States v. Weller*, 238 F.3d 1215, 1220 (10th Cir. 2001).

To support her argument, Cavanaugh points to allegedly impermissible testimony Officer Davis gave at trial. On direct examination, the Defendants' attorney asked Officer Davis why he wanted to stop Mrs. Cavanaugh from entering the house. Officer Davis responded, "I knew that she had been involved in a domestic fight with her husband. I knew that she had pushed him. I knew that she had left with a knife, and I knew that she was going to be upset . . . because we were going to be there." App. 541. Davis continued, "And I felt the best thing to do would be to stop her before she could get into the house for either her to kill herself, for her to get in a fight, continue the fight with him, or something even worse to happen." *Id.*

The Defendants counter that there was nothing wrong with this testimony. At oral argument, the Defendants' attorney explained that Officer Davis merely connected the dots from what he knew to the conclusion he reached: that Cavanaugh was a threat. The jury could then evaluate the reasonableness of this

conclusion in deciding whether the use of force was objectively reasonable. Cavanaugh's argument, by contrast, is that Officer Davis could testify as to what he knew—that she had left the house with a knife, that she had fought with her husband, that she was suicidal, and that she had been drinking—but the jury must reach the conclusion on its own that, under the circumstances, it would have been dangerous for her to enter the house.

In support of her argument, Cavanaugh relies on *Tanberg v. Sholtis*, 401 F.3d 1151 (10th Cir. 2005). There, we reiterated the observation in *Graham* that an officer's "subjective state of mind is irrelevant to the jury's proper inquiry." *Id.* at 1168. But in *Tanberg* we did not apply that principle to exclude the type of testimony Officer Davis offered in this case. In *Tanberg*, we held that an officer's past instances of misconduct were not admissible, when offered by the plaintiff, even if such misconduct may have been probative of the officer's subjective intent, because subjective intent was irrelevant to whether the officer's use of force was reasonable. *Id.* at 1167–68. Indeed, it is often the plaintiff in § 1983 cases who tries to introduce evidence of an officer's subjective intent—in an attempt to show the officer bore some animus toward the plaintiff.

There were certainly alternative ways to ensure the jury connected the dots from the objective facts to the conclusion that force was warranted. A police practices expert could have testified that under the circumstances faced by Officer Davis a reasonable officer would have concluded that Cavanaugh was a threat and

used similar force. Or the Defendants' attorney, in closing argument, could have recited the objective facts known to Officer Davis, and argued that under the circumstances Officer Davis reasonably concluded Cavanaugh was a threat and used proportional force. The problem with an officer testifying about why he employed force is that the jury may be tempted to excuse a constitutional violation if it appears the officer did so in good faith. That is why the jury instructions are important.

Here, the district court cured any possible error by properly instructing the jury that the standard was "objective" and did not depend on the officer's subjective motivations. *Cf. United States v. Trujillo*, 136 F.3d 1388, 1396 (10th Cir. 1998) (district court's possible error in admitting hearsay evidence was cured by instruction to jury telling it not to consider evidence for truth of the matter). We generally presume that juries follow the instructions given to them notwithstanding what has been said in court. *See Bland v. Sirmons*, 459 F.3d 999, 1015 (10th Cir. 2006) ("The jury is presumed to follow its instructions, even when there has been misleading argument." (internal citation omitted)). And here, the district court correctly recited the *Graham* factors and informed the jury to ignore subjective intent.

Accordingly, any error the district court committed in denying Cavanaugh's motion to exclude was harmless.

*C.     Motion for New Trial Due to Insufficient Evidence*

At the close of trial, Cavanaugh filed a motion for a new trial pursuant to

Federal Rule of Civil Procedure 59, partly on the ground that there was no

evidence she posed an immediate threat.[1]  We review a district court's denial of a

Rule 59 motion for abuse of discretion.  *M.D. Mark, Inc. v. Kerr-McGee Corp.*,

565 F.3d 753, 762 (10th Cir. 2009).  Generally, a jury verdict will stand unless it

was "clearly, decidedly, or overwhelmingly against the weight of the evidence."

*Woodard v. JLG Indus., Inc.*, 210 F.3d 1158, 1168 (10th Cir. 2000) (quotation

omitted).

Contrary to Cavanaugh's contention, there was sufficient evidence

demonstrating she was an immediate threat.  Both sides agree that one of the

*Graham* factors for evaluating the use of force is whether the individual poses "an

immediate threat to the safety of the officers or others."  *Graham*, 490 U.S. at

396.  Cavanaugh maintains that the only evidence demonstrating she was an

immediate threat was Officer Davis's subjective fear.  Otherwise there was

---

[1]  As part of the same argument, Cavanaugh contends the district court erred in denying her pretrial "Motion for a Directed Finding" on the *Graham* factor of whether she was an immediate threat.  There is no such pretrial motion.  There is a motion for summary judgment, or partial summary judgment, pursuant to Federal Rule of Civil Procedure 56, but Cavanaugh did not file that.  And even if Cavanaugh had correctly filed her motion, the sufficiency-of-the-evidence issue she raised could only be preserved for appeal by including it in a Rule 50(a) motion at the close of evidence *and* a Rule 50(b) motion after the jury verdict. *See Therrien v. Target Corp.*, 617 F.3d 1242, 1250 n.2 (10th Cir. 2010).  As it is, the record does not reveal that Cavanaugh filed a Rule 50(a) motion after the close of evidence.  Accordingly, she has not preserved her claim for appeal.

nothing: she "did not verbally threaten anyone, she did not display a weapon, she did not attempt to strike anyone . . . ." Aplt. Br. at 35.

Yet Cavanaugh glosses over her "theoretical possession of a knife." *Id.* at 36. Officer Davis responded to the scene after receiving a report that Cavanaugh had left the house with a kitchen knife. This report is an objective factor for the trier of fact to consider in determining whether Officer Davis's response was reasonable. Furthermore, according to Officer Davis's testimony, Cavanaugh did not respond to his questions and kept her hands hidden so that he could not verify whether she was still carrying a knife. Her urgency to enter the home, coupled with reports that she had been drinking and taking pain medications, added further elements of concern to the situation.

In short, a finding that Cavanaugh was an "immediate threat" would not be clearly against the weight of the evidence. Accordingly, the district court did not abuse its discretion in denying Cavanaugh's motion for a new trial.

### D. Jury Instruction for Resisting Arrest

Cavanaugh also contends the district court erred in refusing to instruct the jury as she requested on the resisting arrest factor. Cavanaugh had requested that the court adopt the Utah criminal code's definition of "actively resisting arrest," *see* Utah Code Ann. § 76-8-305, but the court refused.[2] We review "a district

---

[2] The Utah statute criminalizes interfering with an arrest or detention by:

(continued...)

court's refusal to give a requested instruction for abuse of discretion." *United States v. Crockett*, 435 F.3d 1305, 1314 (10th Cir. 2006). But we review the jury instructions de novo to determine "whether, as a whole, they accurately state the governing law." *Id.*

One of the *Graham* factors is whether the individual "is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. Cavanaugh contends a narrow definition based on state law is necessary in any excessive force inquiry, and, had the court adopted her proposed definition of "resisting arrest," the jury would not have returned a verdict for the Defendants since she merely ignored Davis's commands. But the court was not required to adopt Cavanaugh's proposed instruction because whether an individual resisted *arrest* may not always be a relevant factor.

In listing the factors relevant to an excessive force inquiry, the Supreme Court in *Graham* cited to *Tennessee v. Garner*, 471 U.S. 1 (1985), stating that "the question is 'whether the totality of the circumstances justifie[s] a particular

---

[2](...continued)
(1) use of force or any weapon;
(2) the arrested person's refusal to perform any act required by lawful order:
    (a) necessary to effect the arrest or detention; and
    (b) made by a peace officer involved in the arrest or detention; or
(3) the arrested person's or another person's refusal to refrain from performing any act that would impede the arrest or detention.

Utah Code Ann. § 76-8-305.

sort of . . . seizure." 490 U.S. at 396 (quoting *Garner*, 471 U.S. at 8–9). Indeed, evading arrest is not the only instance when a seizure can be effected or force can be used. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968) (permitting seizure to conduct search for weapons upon reasonable suspicion); *see also Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or *investigatory stop* necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." (emphasis added)).

There is a use-of-force spectrum, and where along the spectrum the officer's conduct justifiably falls depends on a variety of circumstances. This spectrum exists even when the seizure effected is merely an investigative detention and not an arrest. *Compare United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993) (concluding it was not unreasonable for officers to "execute the *Terry* stop with their weapons drawn" when suspect was believed to be armed and dangerous), *with Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1322 (10th Cir. 2002) (Hartz, J., concurring in part, dissenting in part) (noting that "use of handcuffs may have constituted excessive force for the investigative detention").

Recognizing this spectrum, the district court properly instructed the jury that one of the factors it may consider, among others, is "whether [Cavanaugh] was actively resisting *seizure* or attempting to evade." Supp. App. 1587 (emphasis added). Our cases do not require the district court to include "actively

-14-

resisting arrest" as a factor in its jury instructions—when the facts do not call for it—let alone adopt Utah's definition of a criminal offense.

For these reasons, we also reject Cavanaugh's distinction between active and passive resistance and her reliance on *Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010). Even if such a distinction were supported by our case law, Cavanaugh's conduct was not purely passive—Davis's testimony showed she ignored his commands to halt, may have had a knife, and was intent on entering a house where her husband and other officers were located. A reasonable officer could conclude in those circumstances that her resistance justified some level of force, and the jury was properly instructed on this element of *Graham*.

In sum, the district court did not abuse its discretion in instructing the jury on the *Graham* factors.[3]

E.    *Constitutional Reasonableness—For the Judge or the Jury?*

Finally, Cavanaugh raises a more fundamental challenge to the jury instructions. She argues that the district court erred in submitting to the jury the question whether Officer Davis used excessive force. Cavanaugh contends the court should have given the jury special interrogatories to decide the factual disputes and made the legal determination itself whether Davis's conduct was

---

[3] For similar reasons, the district court did not abuse its discretion in refusing to grant Cavanaugh a new trial on the ground that she was not actively resisting arrest. The jury instructions the court delivered were not erroneous. And because the jury was not evaluating whether Cavanaugh was resisting arrest, the fact there was no evidence on this point does not render the verdict suspect.

reasonable under the circumstances. While the argument is not entirely without merit, the district court did not err in this case.

The district court instructed the jury to determine whether "Mrs. Cavanaugh proved by preponderance of the evidence that Officer Davis violated Mrs. Cavanaugh's right to be free from excessive force." App. 846. In doing so, the district court's instructions asked the jury to consider the *Graham* factors and determine whether Officer Davis used excessive force. For example, the instructions directed the jury to the extent of injury, the need and severity of force, the threat to the officer, and Cavanaugh's noncooperation. And the jury was instructed the inquiry was an "objective one," considering the *Graham* factors from the "perspective of a reasonable officer at the scene," "without regard to his underlying intent or motivations." Supp. App. 1587–88.[4]

---

[4] The complete excessive force instruction was as follows:

Ms. Cavanaugh claims Officer Davis used excessive force when he seized Ms. Cavanaugh. In making a lawful seizure, a law enforcement officer has the right to use such force as is necessary under the circumstances to effect the seizure. Whether or not the force used in making a seizure was unreasonable is a question to be determined by you in light of all the evidence received in the case.

You must determine the degree of force that a reasonable and prudent police officer would have applied in effecting the seizure under the circumstances shown from the evidence received in this case. In determining whether Officer Davis used excessive force, you may consider, among other things, the following:

    1.    The extent of the injury suffered,

(continued...)

-16-

While Cavanaugh is correct that, generally, legal issues are for the court and factual issues for the jury, the excessive force question, like most Fourth Amendment inquiries, is a mixed question of law and fact. *See Ornelas v. United States*, 517 U.S. 690, 696 (1996) (noting that question whether a police officer's observations amounted to "reasonable suspicion" or "probable cause" was a mixed question of law and fact). Such mixed fact-law questions can be for the jury or the court depending on the situation.

---

[4](...continued)
2. The need for the application of force,
3. The relationships between the need and the amount of force used, including the severity and nature of the suspected offense, if any,
4. The immediate threat to the officer or others reasonably perceived by a reasonable law enforcement officer, and
5. Ms. Cavanaugh's behavior, such as whether she was actively resisting seizure or attempting to evade.

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight. The nature of reasonableness must allow for the fact that police officers are often forced to make split-second judgments—under circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation. An officer can act reasonably without using the least amount of force necessary.

This reasonableness inquiry is an objective one. The question is whether Officer Davis's actions are objectively reasonable in light of the facts and circumstances confronting him, without regards to his underlying intent or motivation.

Supp. App. 1587–88.

As a general matter our cases hold that, where there are disputed issues of material fact, the question of reasonableness underlying a Fourth Amendment violation is for the jury. Thus, for example, we recognize that "[a]lthough on a motion to suppress the ultimate question of the reasonableness of a search or seizure is regarded as a question of law subject to de novo review by the appellate court, in a damages action based on an alleged Fourth Amendment violation the reasonableness of a search or seizure is a question for the jury." *Sherouse v. Ratchner*, 573 F.3d 1055, 1059 (10th Cir. 2009). And "where there is a question of fact or 'room for a difference of opinion' about the existence of probable cause, it is a proper question for a jury, even though it is normally determined by a court during the warrant application process." *Bruner v. Baker*, 506 F.3d 1021, 1028 (10th Cir. 2007) (citation omitted); *see also Curley v. Klem*, 499 F.3d 199, 211, 215 (3d Cir. 2007) (noting that question whether officer's shooting of plaintiff was reasonable went to the existence of a constitutional violation in the first place and was "an essentially factual question" for the jury). These principles from probable cause cases are equally applicable to our excessive force cases.

Only where there are no disputed questions of historical fact does the court make the excessive force determination on its own, such as on summary judgment. *See Keylon v. City of Albuquerque*, 535 F.3d 1210, 1215 (10th Cir. 2008) (noting that "while probable cause is usually a question for the jury, a court

-18-

should decide it when there is no genuine issue of material fact"); *see also Scott v. Harris*, 550 U.S. 372, 386 (2007) (concluding that officer's conduct in ending high-speed chase was objectively reasonable given undisputed video showing recklessness of fleeing driver).

In this case, there were disputed issues of material fact relating to Officer Davis's use of the taser. On summary judgment, Cavanaugh contended that her hands were visible while she was walking toward the house, that she did not run toward the door, and that she received no warning to stop. It was partly on the basis of these facts that we concluded the Defendants were not entitled to qualified immunity. *Cavanaugh*, 625 F.3d at 665–67. Yet at trial, Officer Davis testified that Cavanaugh's hands were stuffed underneath her armpits, that she ran toward the door, and that she rebuffed his verbal and physical efforts to stop her. Given the prior report that Cavanaugh was carrying a knife, her hand placement and behavior outside the house were central to determining whether—from the perspective of an objectively reasonable officer—she posed a threat to herself or others. Due to these disputes of material fact, it was proper for the district court to send the question of whether Officer Davis's use of force was reasonable to the jury.

But Cavanaugh contends the district court should have given the jury special interrogatories tailored to the *Graham* factors—and then the court should have applied the jury's findings to make the excessive force determination itself.

Yet the cases she relies on for this proposition concern either (1) the court's evaluation of the excessive force issue at the summary judgment stage, or (2) the issue of qualified immunity, which involves both whether there was a constitutional violation *and* whether the violation was clearly established. None of the cases support the broad rule she seeks. *See Gonzales v. Duran*, 590 F.3d 855, 860 (10th Cir. 2009) (qualified immunity generally not for jury); *Keylon*, 535 F.3d 1210 (no jury question where material fact undisputed). In short, the court may rule on summary judgment that an officer's conduct was reasonable (or unreasonable) if the undisputed facts support such a conclusion. But the court's resolution of an excessive force claim as a matter of law, where there is no genuine issue of material fact, does not mean a jury cannot decide the question where there *are* disputed issues of material fact.

This flows from the nature of a § 1983 excessive force claim. It requires two separate inquires: (1) the mixed factual-legal inquiry in deciding whether the force used was reasonable, *Fisher v. City of Las Cruces*, 584 F.3d 888, 894–95 (10th Cir. 2009), and (2) the legal inquiry whether the officer's actions were objectively reasonable in light of clearly established law, *id.* at 901. While both concern questions of objective "reasonableness," they are distinct. *See Saucier v. Katz*, 533 U.S. 194, 204 (2001) ("The inquires for qualified immunity and excessive force remain distinct, even after *Graham*."), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The first is a question

-20-

whether, under all the circumstances, the officer's use of force was reasonable. The Supreme Court in *Graham* channeled that question into an assessment of non-exclusive factors arising from the police-citizen encounter. The second is a question whether, in light of clearly established law, an objectively reasonable officer would believe his or her conduct was permitted. *See id.* at 205 ("If the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense."). This second question is a legal one for the court to decide; it involves a determination of what was clearly established law at the time of the officer's conduct, which requires an assessment of the state of the law that only the judge is qualified to make. But the first ordinarily goes to the jury where there are disputed facts that bear on the use of force, especially where the second question has disappeared from the case.[5]

While our cases allow courts to broadly submit the constitutional violation question to a jury where there are disputed historical facts, that practice is not without limits. In many cases, the better practice is for the district court to use special interrogatories, at least where qualified immunity is at issue. For

---

[5] The allocation of responsibility between judge and jury can raise complex legal and policy concerns given the constitutional stature of § 1983 litigation. *Compare* Michael Wells, Scott v. Harris *and the Role of the Jury in Constitutional Litigation*, 29 REV. LITIG. 65 (2009) (arguing that Fourth Amendment reasonableness determinations should be left to judges in order to formulate clearer rules for constitutionally permissible behavior), *with* Catherine Struve, *Constitutional Decision Rules for Juries*, 37 COLUM. HUM. RTS. L. REV. 659, 704–06 (2006) (arguing that applying provisions of the Bill of Rights in civil suits should be left to juries).

example, had the jury found for Cavanaugh in this case, the Defendants may have filed a motion for judgment as a matter of law based on qualified immunity. Even though we previously held that under the version of facts presented by Cavanaugh, Officer Davis would not have been entitled to qualified immunity, there would have been no guarantee, without special interrogatories, that the jury found all the facts supporting such a determination. That is, the jury could have found there was a constitutional violation but nevertheless based that judgment on a set of facts less egregious than the one presented in Cavanaugh's case in chief—and thus the Defendants may have been entitled to qualified immunity. *See id.* at 206 (noting that even if officer's conduct was "unreasonable," officer may be "immun[e] for reasonable mistakes as to the legality of their actions"). This is why, when qualified immunity is at issue, many courts have stated that the relevant disputed issues of fact must be resolved by the jury through special interrogatories, while the court must decide the qualified immunity question. *Compare Kelley v. LaForce*, 288 F.3d 1, 7 (1st Cir. 2002) (noting that "factual issues must be decided by the trier of fact" and only then "can the court determine whether the actions were objectively reasonable so as to fall under the qualified immunity umbrella"), *and Willingham v. Crooke*, 412 F.3d 553, 559–60 (4th Cir. 2005) (while "disputed material facts . . . must be submitted to a jury" the "legal question of a defendant's entitlement to qualified immunity under a particular set of facts should be decided by the court"), *with Gonzales*, 590 F.3d at 859–60

(allowing either jury or judge to decide the qualified immunity question as long as the judge "define[s] the clearly established law for the jury" and "issues of disputed material fact are dispositive of the qualified immunity inquiry").

We considered this question in some length in *Gonzales*. In that case, we endorsed two methods of submitting qualified immunity questions to the jury. The first was through special interrogatories, after which the "court could then determine whether the defendant's conduct was objectively reasonable in light of the clearly established law." 590 F.3d at 859. The second method allows a court "to instruct the jury to determine what the defendant actually did and whether it was reasonable in light of the clearly established law defined by the judge." *Id.* But we condemned a third method of "simply allow[ing] the jury to determine what the clearly established law is, what the defendant actually did, and whether the defendant's conduct was objectively reasonable in light of the clearly established law found by the jury." *Id.* at 860.

Even though *Gonzales* endorsed the second approach, it emphasized the approach should only be used "rarely" in those circumstances "when narrow issues of disputed material fact are dispositive of the qualified immunity inquiry." *Id.* "[T]he better approach," we concluded, "is for the court to submit special interrogatories to the jury to establish the facts." *Id.* And we emphasized that "allowing the jury to evaluate the objective reasonableness of a defendant's conduct" would be done "only because specific key, disputed facts were

-23-

dispositive of the qualified immunity issue." *Id.* at 861 (internal quotation marks omitted).

Other courts have noted that some factual disputes may go both to the constitutional violation question and to the qualified immunity question. What happens then? They have given the constitutional violation question to the jury through a general verdict, while also giving it special interrogatories on factual issues that are crucial for determining qualified immunity. *See, e.g.*, *Stephenson v. Doe*, 332 F.3d 68, 80–81 (2d Cir. 2003) (noting that if the "jury returns a verdict of excessive force," then the court should make the qualified immunity decision based on the jury's determination, through special interrogatories, of "what the facts were that the officer faced or perceived"). Or, as we noted in *Gonzales*, the court can submit only special interrogatories to the jury, and then "[o]nce the jury determines the purely historical facts, the judge then decides the three legal questions of qualified immunity: whether the actions violated the plaintiff's constitutional rights, whether those constitutional rights were clearly established, and whether the objectively reasonable defendant 'would have known that his conduct violated that right.'" 590 F.3d at 860 n.4 (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1007 (10th Cir. 2003)).

Thus, for example, in this case, the court could have given interrogatories to the jury that pinned down whether a knife was visible or whether Officer Davis asked Cavanaugh to stop, both of which would have been relevant to whether a

-24-

constitutional violation occurred in the first place and, if it did, whether Officer Davis should have known that his conduct violated Cavanaugh's rights.[6]  And then, assuming qualified immunity had been reasserted, the court could have decided the legal questions itself.

Regardless of what the better practice may be (and it undoubtedly depends on the case), it is clear the district court here did not abuse its discretion in refusing to submit special interrogatories to the jury.  Where qualified immunity is not at issue, a court may submit the excessive force question to the jury. Accordingly, we reject this basis for challenging the district court's judgment.[7]

---

[6]  It should be noted that the party raising the qualified immunity defense—the defendant—usually bears the burden of requesting special interrogatories. *See Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) ("To the extent that a particular finding of fact is essential to a determination by the court that the defendant is entitled to qualified immunity, it is the responsibility of the defendant to request that the jury be asked the pertinent question." (citation omitted)).

[7]  Cavanaugh also challenges three evidentiary rulings that went to the issue of damages.  Even if the district court erred in any of these rulings, Cavanaugh cannot show prejudice.  Of the three elements of a § 1983 claim, the jury concluded the second element was not met since Officer Davis did not use excessive force.  The jury did not reach the questions of causation and damages. Yet all three evidentiary rulings relate to causation and damages.  And Cavanaugh cannot begin to show that this evidence somehow unfairly influenced the jurors' determination of liability.

# III. Conclusion

Because the district court did not err in instructing the jury, and because Cavanaugh cannot show the district court committed reversible error in any of its evidentiary rulings, we AFFIRM.